DECISION AND JUDGMENT ENTRY
{¶ 1} A car driven by Randy J. Murphy collided with a van driven by Christopher Stonerock, who died as a result of his injuries; Stonerock's passenger, Lisa Wilson, suffered serious injuries. Prior to the accident, Murphy had been drinking at a party. A jury found Murphy guilty of two counts of aggravated vehicular homicide, one count of aggravated vehicular assault, and one count of vehicular assault. After merging the convictions, the trial court sentenced Murphy to four years in prison for aggravated vehicular homicide (Stonerock's death) and one year in prison for aggravated vehicular assault (Wilson's injuries).
 {¶ 2} In this appeal, Murphy argues that the State failed to present sufficient evidence to establish the aggravated nature of his conduct, i.e., that he drove under the influence of alcohol or recklessly. However, the State presented testimony from *Page 2 
multiple witnesses that Murphy smelled heavily of alcohol, had trouble walking, slurred his speech, and demonstrated confusion and disorientation after the accident. When viewed in a light most favorable to the prosecution, this evidence is sufficient to prove that Murphy was intoxicated. Combined with the additional evidence of Murphy running a stop sign, his excessive speed, and bad weather, this evidence is also sufficient to prove that Murphy drove recklessly.
 {¶ 3} Second, Murphy argues that the jury's verdict was against the manifest weight of the evidence because the trial testimony of several witnesses concerning his level of intoxication was irreconcilable with their testimony at a prior suppression hearing. However, this testimony is not irreconcilable; rather, the abbreviated descriptions given at the suppression hearing were in response to questions that did not demand a more detailed answer. At trial, the questions were far more specific and thus elicited more detail in the responses. To the extent there are inconsistencies, we leave credibility determinations to the fact finder. Thus, the jury was free to give whatever credibility it felt appropriate to the state's theory that it was intoxication, rather than the accident, that caused Murphy's confusion and trouble walking. Given the evidence presented at trial, we do not believe the jury lost its way and created a manifest miscarriage of justice.
 {¶ 4} Third, Murphy argues that the trial court committed plain error by failing to instruct the jury on the lesser included offenses of vehicular homicide and vehicular assault. Murphy also argues that trial counsel was ineffective for failing to request an instruction regarding these lesser included offenses. However, Murphy's primary defense was that the other driver ran the stop sign and caused the accident. Thus, trial *Page 3 
counsel's failure to request a jury instruction appears to be a matter of trial strategy, i.e., he had a chance to obtain a complete acquittal if the jury believed Murphy's version of events. Given Murphy's testimony at trial, we believe that the decision to seek a complete acquittal, rather than a conviction on lesser included offenses, was at least of debatable merit. Accordingly, it cannot be the basis for a successful argument for either plain error or ineffective assistance of counsel.
 I. Facts {¶ 5} In the early morning hours of May 31, 2004, Murphy's car and Stonerock's van collided at the four-way intersection of State Route 104 and Infirmary Lane/Fairgrounds Road, Ross County, Ohio. Traffic on State Route 104 has the right-of-way, as drivers coming east from Infirmary Road and coming west from Fairgrounds Road have stop signs. Wilson, who was in the van, later contended she and Stonerock were driving on State Route 104 when the car ran a stop sign at the intersection and struck their vehicle.
 {¶ 6} After the car and the van collided in the southbound lane of State Route 104, both vehicles struck a telephone pole before coming to a rest at the bottom of an embankment on the southwest side of the intersection. The car landed upside-down in a creek bed, and the van landed upside-down on top of the car. Murphy, who wore his seatbelt, was able to extricate himself from the car. Stonerock and his passenger, Wilson, who did not wear their seatbelts, were trapped in the van. After Murphy escaped the wreckage of his car, Patrick and Ann Allen, who were driving separate vehicles, approached the accident scene and encountered Murphy in the road. Murphy was disoriented and had trouble walking; both Patrick and Ann Allen described him as *Page 4 
staggering and smelling of alcohol, which Patrick Allen described as "a big heavy alcohol smell." Murphy did not mention that he had been in an accident, but instead suggested that he had been left there by his friends. The Allens discovered the accident, placed Murphy in the back of one of their vehicles, and called for help.
 {¶ 7} Trooper Dana Hutton first spoke to Murphy while he was sitting in the Allens' van; he "immediately noticed a strong odor of alcohol about his person." Hutton testified that Murphy slurred his speech, did not know where he was, and did not know what had happened. Sherrie Patrick, a member of the EMT squad that treated Murphy at the scene, also testified that she smelled "alcohol about his person." She explained that she found no indication of a head injury or other sign that the accident caused Murphy's confusion about where he was or what had happened to him. As emergency crews removed Stonerock and Wilson from the wreck, Sergeant Gregory McKeever spoke with Murphy in the back of the ambulance. McKeever testified that Murphy appeared to be "a little confused, disoriented, [and] he had a sort of an alcoholic beverage [sic] about his person." McKeever also observed that Murphy slurred his words.
 {¶ 8} The ambulance crew took Murphy to the emergency room, where he was treated by Stephanie Brown, a registered nurse. She testified at trial that Murphy told her he had consumed ten beers that night at a party. Trooper Aaron Cooper questioned Murphy at the hospital about the accident and took down in a statement that Murphy had six to ten beers that night. However, Murphy refused to sign this statement.
 {¶ 9} Stonerock died of his injuries after arriving at the hospital. Because the accident now involved a fatality, Sergeant McKeever questioned Murphy a second time *Page 5 
at the hospital. McKeever prepared a written statement that indicated Murphy had had six to ten beers at a party that night, he did not know how he got onto State Route 104, and he did not remember the accident; Murphy signed it. McKeever also testified that Murphy was emotional and crying, smelled of alcohol, and showed signs of being impaired by alcohol at the hospital.
 {¶ 10} At trial, Wilson testified that she and Stonerock were driving to Chillicothe to get food at a Burger King when a car ran a stop sign on Fairgrounds Road and collided with Stonerock's van from the driver's side. She suffered a broken pelvis and required two surgeries on her leg. The State also presented the testimony of Dr. John Ziskowski, who explained that Stonerock died of cardiac arrest resulting from the shock caused by the traumatic injuries suffered in the automobile accident. Finally, Trooper Paul Mercer testified as an accident reconstruction expert that Murphy had been traveling at a rate of 51.09 to 68.2 mph on Fairgrounds Road before he ran the stop sign and collided with Stonerock's car. Mercer also testified that Stonerock's van was traveling south on State Route 104 at a rate of 26.37 to 35.19 mph. He based this determination on the original measurements recorded by Trooper Hutton, photographs of the accident scene, and a visit to the scene. Importantly, Mercer testified that based on the weight of the vehicles, the impacts of the accident on the asphalt, and the damage to the vehicles themselves, the only way that the van and the car could have come to their final resting positions was if the van was traveling south on State Route 104 and the car was traveling west on Fairgrounds Road.
 {¶ 11} Murphy testified on his own behalf. He explained that he had seen a band play earlier that night in a field, where he drank beer from a keg. After it began raining, *Page 6 
the band stopped playing and, according to Murphy, he sat in the car for two to three hours while he sobered up because he would not drive drunk. After dropping off three people who came to the field with him and whose last names he could not remember, he decided to drive to the V.A. Hospital. According to Murphy, he was driving south on State Route 104 when he was hit by a van coming from his right. He explained his prior statements to State Troopers and medical providers by stating that he was suffering from confusion caused by the accident.
 {¶ 12} The jury found Murphy guilty of two counts of aggravated vehicular homicide, violations of R.C. 2903.06(A)(1)(a) and R.C.2903.06(A)(2)(a) respectively, and one count of aggravated vehicular assault and one count of vehicular assault, violations of R.C.2903.08(A)(1)(a) and R.C. 2903.08(A)(2)(b), respectively. Specifically, the jury found that Murphy caused the death of Stonerock as the proximate result of operating a vehicle under the influence of alcohol, the R.C. 2903.06(A)(1)(a) violation, and that Murphy caused the death of Stonerock while recklessly operating a motor vehicle, the R.C.2903.06(A)(2)(a) violation. The jury also found that Murphy caused serious physical harm to Wilson as the proximate result of operating a vehicle under the influence of alcohol, the R.C. 2903.08(A)(1)(a) violation, and that Murphy caused serious physical harm to Wilson while recklessly operating a motor vehicle, the R.C. 2903.08(A)(2)(b) violation. The trial court merged the two violations of R.C. 2903.06(A), and it also merged the two violations of R.C. 2903.08(A). Thus, it sentenced Murphy to four years in prison for the aggravated vehicular homicide charge and one year for the aggravated vehicular assault charge, with the prison terms running concurrently. Murphy now brings this appeal. *Page 7 
 II. Assignments of Error {¶ 13} Murphy presents three assignments of error:
 1. "Mr. Murphy's convictions for aggravated vehicular homicide, and aggravated vehicular assault are supported by insufficient evidence, and are against the weight of the evidence, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution (January 30, 2007 Judgment Entry of Sentence; T.p. 299)."
 2. "The trial court committed plain error when it failed to instruct the jury on the lesser-included offenses of vehicular homicide and vehicular assault, in violation of the Fifth
and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution (January 30, 2007 Judgment Entry of Sentence; T.p. 299)."
 3. "Trial counsel rendered] ineffective assistance of counsel by failing to request the court instruct the jury on lesser-included offenses, and by failing to object to improper jury instructions, in violation the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution (January 30, 2007 Judgment Entry of Sentence; T.p. 299)."
Because his first assignment of error raises two separate arguments, we will address each in turn before discussing his second and third assignment of error.
 III. The Sufficiency of the Evidence {¶ 14} In his first assignment of error, Murphy argues that the State failed to produce sufficient evidence to allow the trial court to submit the case to the jury. Our standard of review is familiar: "`[w]hen reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court's role is to examine the evidence admitted at trial to determine whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" State v. Nayar, Lawrence App. No. 07CA6, 2007-Ohio-6092, at ¶ 13, quoting State v. Simms, 165 Ohio App.3d 83, 2005-Ohio-5681,844 N.E.2d 1212, at ¶ 9. "The relevant inquiry is whether, *Page 8 
after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" Id., quotingSimms at ¶ 9. Our evaluation of the sufficiency of the evidence raises a question of law and does not permit us to weigh the evidence.Simms at ¶ 9, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
 {¶ 15} Murphy first argues that the State failed to produce sufficient evidence to prove that he was driving under the influence of alcohol and, therefore, that he violated R.C. 2903.06(A)(1)(a) (aggravated vehicular homicide) and R.C. 2903.08(A)(1)(a) (aggravated vehicular assault). In order to find Murphy guilty of violating these statutes, the jury had to find that Stonerock died and that Wilson suffered serious injuries as the proximate result of Murphy operating a vehicle under the influence of alcohol. R.C. 2903.06(A)(1)(a); R.C.2903.08(A)(1)(a); R.C. 4511.19(A)(1)(a). Murphy relies on State v.Joy, Stark App. No. 2005CA235, 2006-Ohio-1923, State v. Crawford, Columbiana App. No. 06CO7, 2006-Ohio-4860, and State v. Theiss, Athens App. No. 01CA37, 2001-Ohio-2630, for the proposition that testimony regarding odors of alcohol by itself cannot establish that a driver is legally intoxicated or that his driving was impaired. These cases, however, are distinguishable from the case at bar.
 {¶ 16} In Joy, the only evidence regarding the defendant's intoxication and impairment was "the indication of an odor of alcohol and one officer noting glassy eyes while the other officer did not."Joy at ¶ 130. Specifically, the court noted that "[n]o evidence as to slurred speech, red eyes, difficulty in walking or other indicia of operating Appellant's vehicle under the influence was offered." Id. at ¶ 132. Thus, the court concluded that insufficient evidence supported the charges that the defendant violated *Page 9 
R.C. 2903.08(A)(1)(a) by virtue of violating R.C. 4511.19(A)(1)(a). InCrawford, the Seventh District held that evidence that the defendant had taken "two Valium four hours prior to the accident" was insufficient to prove the violation of R.C. 4511.19(A)(1)(a). In that case, there was no other evidence presented regarding her impairment, and the court explained that "there was no testimony regarding the effects of the drug on her judgment or her reflexes [or] regarding her demeanor or behavior prior to or immediately after the accident which would indicate she was impaired." Crawford at ¶ 10. In Theiss, we affirmed the suppression of evidence on the grounds that a police officer lacked probable cause to arrest the defendant for driving under the influence. The officer had stopped the defendant because her license plate was not illuminated. Based upon the absence of erratic driving and the officer's equivocal characterization of other indicators of impairment, we agreed with the trial court regarding the absence of probable cause.
 {¶ 17} In contrast, there was far more evidence presented at trial than mere testimony regarding an odor of alcohol. The Allens both testified that Murphy was "staggering" when they encountered him. Ann Allen testified that Murphy was "having trouble walking," and Patrick Allen testified that Murphy was unable to "[t]o put one foot in front of the other." Patrick Allen also testified that the smell of alcohol was "just overwhelming. I mean, you can tell when somebody' been drinking, and when somebody's been drinking a lot." Trooper Mercer testified that, based on his reconstruction of the accident, Murphy had run a stop sign and was speeding, both of which a jury might reasonably relate to alcohol impairment. The EMT who treated Murphy at the scene, Patrick, testified that Murphy was unable to tell her where he was and whether he had been in an accident, and she stated that she did not believe the *Page 10 
accident caused his confusion. Sergeant McKeever testified that, at the scene, Murphy appeared "a little confused and disoriented * * *. His speech was slurred at times and * * * he gave * * * a statement to the effect that there was three other people in the vehicle with him" when there were not. Furthermore, McKeever observed Murphy at the hospital and testified that he "displayed signs of alcohol impairment. * * * [T]he alcohol was effecting his ability of hand to eye coordination, speech, eyes bloodshot." Trooper Hutton testified that he believed that Murphy was not sober after the accident because of Murphy's strong odor of alcohol, "his slurred speech, not knowing where he was at, not knowing if he was driving, not knowing what happened." Brown, the ER nurse, testified that Murphy admitted drinking ten beers before the accident. Although Murphy testified that he was not intoxicated when the collision occurred, he also admitted to being confused at the scene and to having a spotty memory regarding the accident.
 {¶ 18} Thus, there was more evidence submitted at trial than that Murphy merely smelled of alcohol. Instead, there was evidence that Murphy slurred his speech, had difficulty walking, was confused and disoriented, and had bloodshot eyes. Furthermore, there was evidence that Murphy had run a stop sign, and, therefore, was driving erratically. Patrick Allen testified that Murphy smelled like he had been drinking heavily, and Murphy admitted to drinking six to ten beers before the accident. Sergeant McKeever and Trooper Hutton each testified that Murphy appeared to have been impaired by alcohol. The State presented sufficient evidence to allow a jury to determine whether Murphy operated a vehicle while under the influence of alcohol. SeeState v. Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, at ¶ 14 (noting that lay witness testimony regarding "indicia of intoxication, such as slurred speech, *Page 11 
bloodshot eyes, and odor of alcohol * * * helps resolve the issue of whether the defendant was driving while intoxicated.").
 {¶ 19} Murphy argues that the rain storm that night made the roads dangerous on their own, and he notes that Trooper Hutton testified that hydroplaning was possible. However, neither Hutton nor Murphy testified that the car had actually hydroplaned; instead, Murphy's testimony was that he was driving safely on State Route 104 and that Stonerock caused the accident. Murphy also argues that his behavior following the accident, including his trouble walking and his confusion, was "entirely consistent with being in a car accident, regardless of intoxication." However, Murphy presented no additional evidence to bolster the claim that his confusion and trouble walking were caused by the accident — or injuries sustained in the accident — rather than intoxication. Murphy argues that the testimony regarding the smell of alcohol was inconsistent in the way that some witnesses characterized the strength of the alcohol. However, each of the State's witnesses testified that they smelled alcohol on him, and multiple witnesses testified to observing signs of intoxication. More importantly, Murphy is ultimately challenging the weight of the evidence and the credibility of the State's witnesses, not the sufficiency of the evidence, with these arguments. However, in examining the sufficiency of the evidence, we may not weigh it. In this case, the State presented sufficient evidence that, if believed, would convince the average mind beyond a reasonable doubt that Murphy violated R.C. 2903.06(A)(1)(a) and R.C.2903.08(A)(1)(a).
 {¶ 20} Next, Murphy argues that insufficient evidence supports his conviction for aggravated vehicular homicide under R.C. 2903.06(A)(2)(a) and vehicular assault under *Page 12 
R.C. 2903.08(A)(2)(b). Specifically, he argues that the State produced insufficient evidence proving that Stonerock's death and Wilson's injuries were the proximate result of Murphy driving recklessly because no witness observed him doing so. He also contends that, because the storm itself made the road conditions hazardous, the State could not prove beyond a reasonable doubt that Murphy had acted recklessly.
 {¶ 21} R.C. § 2901.22 (c) provides that
 [a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
We have already noted that the State put forward sufficient evidence to prove that Murphy was under the influence of alcohol at the time of the accident. And we have previously explained that "[e]vidence that a defendant was driving under the influence of alcohol may be sufficient to support a finding of recklessness under R.C. 2903.06." State v.Ward, Ross App. No. 03CA2703, 2003-Ohio-5847, at ¶ 9. This is because "`[a] licensed driver is charged with knowledge that driving while under the influence is against the law, and creates a substantial risk to himself and others.'" Id., quoting State v. Hennessee (1984),13 Ohio App.3d 436, 439, 469 N.E.2d 947. Thus, by driving while under the influence of alcohol, Murphy disregarded the substantial risk that his actions would injure another. Additionally, there is evidence in the record that he was driving at an excessive rate of speed as he approached the intersection, his speed was excessive for the weather conditions, and he ran the stop sign.
 {¶ 22} Accordingly, the State produced sufficient evidence to allow a jury to determine whether Murphy violated R.C. 2903.06(A)(2)(a) and R.C.2903.08(A)(2)(b). *Page 13 
See Hennessee, 13 Ohio App.3d at 439 (holding that the State's evidence that the defendant drove while under the influence and failed to yield the right of way represented sufficient evidence of recklessness); see also State v. Driesbaugh, Portage App. No. 2002-P-0017, 2003-Ohio-3866, at ¶ 51 (holding that that evidence of driving under the influence is sufficient to establish the element of recklessness); State v. Flanek (Sept. 2, 1993), Cuyahoga App. No. 63308,1993 WL 335601 ("In this day and age when a person becomes voluntarily intoxicated, knowing he or she must later operate a motor vehicle, and then voluntarily elects to get behind the wheel and drive, that person does so with thoughtless indifference to well known risks and consequences, and recklessness can be determined by the factfinder under such circumstances.").
 {¶ 23} We reject his challenge to the sufficiency of the evidence supporting his convictions.
 IV. The Manifest Weight of the Evidence {¶ 24} Murphy also asserts in his first assignment of error that his conviction is against the manifest weight of the evidence. We have recently explained the standard of review for such claims:
 "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and consider the credibility of witnesses. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. See State v. Issa (2001), 93 Ohio St.3d 49, 67, 752 N.E.2d 904; State v. Thomas (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356; State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Once the reviewing court *Page 14 
finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact finder, in resolving conflicts in evidence, `"clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."' Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. See State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus. A reviewing court should find a conviction against the manifest weight of the evidence only in the `"exceptional case in which the evidence weighs heavily against conviction."' Thompkins, 78 Ohio St.3d at 387, quoting Martin, 20 Ohio App.3d at 175); see also, State v. Lindsey (2000), 87 Ohio St.3d 479, 483, 721 N.E.2d 995.
State v. Brooker, 170 Ohio App.3d 570, 2007-Ohio-588, 868 N.E.2d 683, at ¶ 16-17.
 {¶ 25} Murphy's sole argument regarding the manifest weight of the evidence is that "[w]itness inconsistency undermines the validity of Mr. Murphy's conviction." In particular, he argues that the testimony at trial of Sergeant McKeever and Trooper Hutton was "irreconcilable" with their prior testimony at the suppression hearing. He also contends that their testimony is in conflict with that of Trooper Cooper. However, Murphy did not offer any of this prior testimony at trial for impeachment purposes. Thus, he may have waived this issue. Nonetheless, we have examined the entire record generated by the case, including the suppression hearing, and we conclude that Murphy's assertions are meritless.
 {¶ 26} First, Murphy argues that Sergeant McKeever's testimony at the suppression hearing was irreconcilable with his testimony at trial. McKeever testified at trial that Murphy was disoriented, confused, slurred his speech, and smelled of an alcoholic beverage at the crash scene; his testimony at the suppression hearing was *Page 15 
only that "[Murphy] appeared to be * * * possibly under the influence of alcohol." McKeever also testified at trial that at the hospital three to four hours later, Murphy "displayed signs of alcohol impairment," including his belief that "the alcohol was affecting his ability of hand to eye coordination [and] speech" and that Murphy's eyes were bloodshot. However, at the suppression hearing, McKeever only testified that Murphy appeared to be intoxicated. Thus, Murphy argues that McKeever's testimony is suspect because McKeever included details in his trial testimony that he omitted from his testimony at the suppression hearing. However, at the suppression hearing no one asked McKeever to explain why he believed that Murphy was intoxicated at the crash scene and at the hospital. In contrast, at the trial, the prosecution asked McKeever what he observed at the crash scene and what he meant when he testified that Murphy displayed signs of alcohol impairment. While it is true that McKeever's testimony at trial was far more specific than his testimony at the suppression hearing, this difference is attributable to the difference in the nature of the questions he faced. Moreover, none of the details brought out in his testimony at trial are necessarily inconsistent with his testimony at the suppression hearing. Throughout the course of the proceeding, McKeever was consistent that Murphy appeared to be intoxicated at the crash scene and hours later at the hospital.
 {¶ 27} Second, Murphy argues that "Trooper Hutton also inflated his description of Mr. Murphy's intoxication" in that Hutton testified at trial that Murphy was slurring his speech, but he did not mention that fact in his suppression hearing testimony. At trial the State specifically asked what Hutton observed that made him believe that Murphy *Page 16 
was intoxicated; at the suppression hearing, Hutton was only asked if he noticed any odors emanating from Murphy. Therefore, his testimony is not inconsistent.
 {¶ 28} Third, Murphy argues that Trooper Cooper's suppression hearing testimony is inconsistent with the trial testimony of Sergeant McKeever and Trooper Hutton. At the suppression hearing, Cooper described the odor of alcohol coming from Murphy as being "moderate," but also stated, in response to cross-examination by Murphy's attorney, that the odor could possibly have been as little as "noticeable." Cooper also testified that Murphy appeared to be intoxicated when Cooper talked with him at the hospital, although not "so intoxicated that he didn't know where he was at or who he was talking to * * *." Cooper went so far as to describe Murphy as being "very alert" at the hospital.
 {¶ 29} We cannot say that this testimony is so inconsistent with the other testimony presented at trial to undermine the validity of Murphy's convictions. Cooper testified that after the accident, Murphy remained to some degree intoxicated. Both Sergeant McKeever and Trooper Hutton testified that Murphy was intoxicated at the scene of the accident, and in their trial testimony they noted the physical manifestations of intoxication both at the accident scene and hours later at the hospital. Murphy admitted consuming six to ten beers in the hours preceding the accident. The Allens both testified that Murphy had trouble walking following the accident and that he had a strong smell of alcohol.
 {¶ 30} Weighing this evidence against Murphy's testimony that he was not intoxicated and that the accident caused his confusion and trouble walking, we cannot say that "the trier of fact clearly lost its way and created such a manifest miscarriage of *Page 17 
justice that the conviction must be reversed and a new trial ordered."State v. Lewis, Lawrence App. No. 06CA26, 2007-Ohio-2250, at ¶ 11. At trial, Murphy admitted that his own statements to law enforcement officials after the accident were inconsistent with his testimony at trial. Although he claimed his failure immediately following the accident to remember how the accident occurred was the result of being in a severe car accident, he presented no other evidence to support this argument. Although he testified that he was driving southbound on State Route 104 before the accident occurred, this testimony conflicted with his earlier statements indicating he believed he was on an entirely different road miles from the accident scene. Further, his testimony that he remembered being on State Route 104 and seeing Stonerock's van come at him from the west was inconsistent with his prior statements professing to having no memory of the accident or of even how he got onto State Route 104.
 {¶ 31} The issues of weight and credibility of the evidence are matters we leave to the fact finder. Lewis at ¶ 12. The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." Id., quoting Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. In applying the "some competent credible evidence" standard, we should not reverse a judgment merely because the record contains evidence that could reasonably support a different conclusion. It is the trier of fact's role to determine what evidence is the most credible and convincing. The fact finder is charged with the duty of choosing between two competing versions of events, both of which are plausible and have some factual support. Our role is simply to insure the decision is based upon reason and fact. We *Page 18 
do not second guess a decision that has some basis in these two factors, even if we might see matters differently. Rather, we must defer to the trier of fact in that situation. We cannot say that, in crediting the State's evidence over Murphy's testimony, the jury clearly lost its way.
 {¶ 32} We overrule Murphy's first assignment of error.
 V. Instructions on the Lesser-Included Offenses {¶ 33} In his second assignment of error, Murphy argues that the trial court committed plain error by failing to instruct the jury on the lesser included offenses of vehicular homicide and vehicular assault. Specifically, Murphy contends that "the jury could reasonably have concluded that Mr. Murphy acted negligently and not recklessly in causing Mr. Stonerock's death, and Ms. Wilson's injuries."
 {¶ 34} Vehicular homicide is a lesser included offense of aggravated vehicular homicide. State v. Mills (Dec. 9, 1999) Cuyahoga App. No. 74700, 1999 WL 1129073; State v. Whitaker (1996), 111 Ohio App.3d 608,613, 676 N.E.2d 1189. To commit vehicular homicide, a person must negligently cause the death of another while operating a motor vehicle. R.C. 2903.08(A)(3)(a); R.C. 2903.08(C). The record reflects that the trial court did not instruct the jury that it could convict Murphy of vehicular homicide. However, Murphy's trial counsel did not request a lesser included offense instruction or object to the court's failure to provide one. Thus, Murphy did not preserve the argument for appellate review, and we may only reverse the trial court's judgment if the failure to give the lesser included offense instruction amounts to plain error. Crim. R. 52; State v. Patterson, Washington App. No. 05CA16,2006-Ohio-1902, at ¶ 13. We will take notice of plain error under Crim.R. 52(B) with the utmost of caution, under *Page 19 
exceptional circumstances, and only to prevent a manifest miscarriage of justice. Id., citing State v. Barnes (2002), 94 Ohio St.3d 21, 27,759 N.E.2d 1240. Appellate courts do not invoke plain error unless, but for the error, the outcome of the trial would clearly have been otherwise. Id., citing State v. Jackson (2001), 92 Ohio St.3d 436, 438,751 N.E.2d 946.
 {¶ 35} While a trial court does have a duty to include instructions on lesser included offenses where they are appropriate, a defendant still retains the right to waive such instructions. State v. Clayton (1980),62 Ohio St.2d 45, 47 n. 2, 402 N.E.2d 1189. Thus, Murphy was entitled to make the tactical decision not to request an instruction on lesser included offenses in hopes of winning an acquittal if the jury believed his contention that the other driver caused the accident.
 {¶ 36} Generally, a failure to request a jury instruction on a lesser included offense is presumed to be a matter of trial strategy. State v.Teets, Pickaway App. No. 02CA1, 2002-Ohio-6799, at ¶ 26; State v.Clark, Lawrence App. No. 03CA18, 2004-Ohio-3843, at ¶ 15, citingState v. Griffie (1996), 74 Ohio St.3d 332, 1996-Ohio-71; see, also,State v. Riley, Franklin App. No. 06AP-P1091, 2007-Ohio-4409, at ¶ 5
(holding that, in light of this presumption, the failure to request an instruction on a lesser-included offense does not by itself establish plain error or the ineffective assistance of counsel); and State v.Davis, Summit App. No. 21794, 2004-Ohio-3246, at ¶ 18 ("Defendant in this case has offered no evidence showing that trial counsel's decision not to request those instructions was anything other than sound trial strategy aimed at acquiring a complete acquittal."). *Page 20 
 {¶ 37} A defendant may not rely on the plain error rule to evade the consequences of his own trial strategy. State v. Claytor (1991),61 Ohio St.3d 234, 240, 574 N.E.2d 472 ("What appears to have been a tactical decision [not to request the lesser included offense in jury instructions] in this case during the trial cannot now be converted into judicial error."); State v. Noggle, 140 Ohio App.3d 733, 746,2000-Ohio-1927, 749 N.E.2d 309 ("[W]e note that plain error cannot be used to negate a deliberate, tactical decision by trial counsel."). Murphy cannot complain that the trial court committed plain error where counsel apparently was seeking an acquittal rather than inviting conviction on some lesser offense.
 {¶ 38} In an effort to rebut the presumption of trial strategy, Murphy argues the jury could have reasonably concluded that he had attempted to obey the stop sign. In other words, his failure to stop resulted from negligence rather than recklessness. However, that contention is not consistent with the evidence. Murphy testified that Stonerock caused the accident; he tried to convince the jury that he was driving diligently. Murphy testified that he, not Stonerock, was driving on State Route 104. He explained to the jury that, as he was driving down the road, he was flashing his lights at certain intersections in order to make sure that other cars saw him and in order to avoid a collision. Finally, in closing statements, trial counsel asked the jury to acquit Murphy on all charges. There is very little, if any, evidence to rebut the presumption.
 {¶ 39} Murphy also argues that the trial court committed plain error in not instructing the jury on the lesser included offense of vehicular assault because the jury could have found Murphy acted negligently, rather than recklessly, in causing Ms. *Page 21 
Wilson's injuries. Under R.C. 2903.08(A)(2)(b)[1] and R.C.2903.08(C)(1),[2] a person commits the crime of vehicular assault when he recklessly causes serious physical harm to another person while operating a motor vehicle.[3] "Unlike the aggravated vehicular homicide/vehicular homicide statute, R.C. 2903.06, its `assault' counterpart (the aggravated vehicular assault/vehicular assault statute * * *) contains no provision for a `negligent' culpable mental state."State v. Wasson, Franklin App. No. 02AP-211, 2002-Ohio-5963, at ¶ 24. If the jury believed Murphy acted negligently, they would have had to simply acquit him, not find him guilty of a lesser offense. Because the General Assembly has not created a "vehicular assault" offense that only requires a negligent mental state, Murphy's argument is meritless. *Page 22 
 {¶ 40} We overrule Murphy's second assignment of error.
 VI. Ineffective Assistance of Counsel {¶ 41} In his third assignment of error, Murphy argues that his trial counsel provided ineffective assistance of counsel for failing to request an instruction on the lesser included offenses of vehicular homicide and vehicular assault. As the Supreme Court of Ohio explained in State v. Conway, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, at ¶ 95,
 [r]eversal of a conviction or sentence based upon ineffective assistance of counsel requires satisfying the two prong test set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674. Strickland requires that the defendant show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Id. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.; State v. Bradley (1989), 42 Ohio St.3d 136, 143, 538 N.E.2d 373.
The appellant has the burden of proof on the issue of counsel's ineffectiveness because, in Ohio, a properly licensed attorney is presumed competent. State v. Gondor, 112 Ohio St.3d 377, 2006-Ohio-6679,860 N.E.2d 77, at ¶ 62; State v. Lott (1990), 51 Ohio St.3d 160, 175,555 N.E.2d 293.
 {¶ 42} As we already noted, a failure to request a jury instruction on a lesser included offense is presumed to be a matter of trial strategy, and, therefore, does not establish ineffective assistance of counsel. See Teets at ¶ 26; see, also, Griffie, 74 Ohio St.3d at 333,658 N.E.2d 764 ("The record may reveal that trial counsel did not request a certain jury instruction, but, without more, the court of appeals would have to *Page 23 
guess as to why trial counsel did not make the request. Failure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel."). The record supports the conclusion that Murphy pursued a trial strategy of an "all-or-nothing" defense, seeking an outright acquittal and denying the jury the opportunity to find him guilty of another crime. In any case, "[appellate courts] will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable." State v. Myers,97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, at ¶ 152; see, also,Conway at ¶ 111 ("Furthermore, debatable trial tactics do not constitute ineffective assistance of trial counsel."). Given Murphy's decision to testify and the content of his testimony, we believe that the decision to seek an outright acquittal was at least "debatable." Therefore, we reject Murphy's argument that his trial counsel was ineffective for failing to request a jury instruction on the lesser included offense of vehicular homicide.
 {¶ 43} And as we noted above, there is no negligent vehicular assault offense under R.C. 2903.08; therefore, his argument that trial counsel was ineffective for failing to request such an instruction is also meritless.
 {¶ 44} We overrule Murphy's third assignment of error.
 VII. Conclusion {¶ 45} There was sufficient evidence of each element of the charges against Murphy to submit the case to the jury, and the manifest weight of the evidence supports their verdict. Furthermore, the trial court did not commit plain error by failing to instruct the jury on the lesser included offense of vehicular homicide or vehicular assault; nor *Page 24 
was trial counsel ineffective for failing to request such a jury instruction. Accordingly, we affirm the judgment.
 JUDGMENT AFFIRMED. *Page 25 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. McFarland, J.: Concur in Judgment and Opinion.
[1] R.C. 2903.08(A)(2)(b) provides, in pertinent part:
 (A) No person, while operating or participating in the operation of a motor vehicle * * *, shall cause serious physical harm to another person or another's unborn in any of the following ways:
 * * *
 "(2) In one of the following ways:
 * * *
 (b) Recklessly.
[2] R.C. 2903.08(C)(1) states that "[w]hoever violates division (A)(2) or (3) of this section is guilty of vehicular assault * * *."
[3] While Count Four of the indictment is captioned "Aggravated Vehicular Assault [R.C.] 2903.08(A)(2)", the body of the indictment clearly indicates that Murphy is charged with vehicular assault. The body of the indictment provides:
 "COUNT FOUR That Randy J. Murphy on or about the 31st day of May, 2004, in the County of Ross aforesaid did while operating or participating in the operation of a motor vehicle, recklessly cause serious physical harm to Lisa Wilson, in violation in [sic] Section 2903.08 of the Ohio Revised Code and against the peace and dignity of the State of Ohio."
In its instructions to the jury, the trial court incorrectly explained that count four was for "aggravated vehicular assault." However, it properly instructed the jury on vehicular assault: "The allegations in Count Four of the indictment are that the defendant * * * did, while operating a motor vehicle, recklessly cause serious physical harm to Lisa Wilson." *Page 1