OPINION
{¶ 1} This is an appeal from separate convictions of two counts tried to a jury and three counts heard in a bench trial.
 {¶ 2} The bench trial concerned two counts of aggravated vehicular assault and a misdemeanor charge of OMVI.
 {¶ 3} The jury trial was as to two counts of vehicular assault.
 STATEMENT OF THE FACTS AND CASE {¶ 4} On July 8, 2005, Appellant, who was driving a pickup truck, was charged with violating a signal light at 5th
Street, N.E. and Cherry Avenue, N.E. and striking an Oldsmobile broadside as a result. Testimony indicated excessive speed and no braking prior to the collision.
 {¶ 5} Witnesses testified as to a strong odor of alcohol from Appellant, although he refused a test.
 {¶ 6} The occupants of the automobile were severely injured.
 {¶ 7} The three Assignments of Error are:
 ASSIGNMENTS OF ERROR {¶ 8} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 9} "II. THE APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH ANDFOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE.
 {¶ 10} "III. THE TRIAL COURT ERRED PREJUDICIALLY WHEN IT FAILED TO CONDUCT A PROPER COLLOQUY AT APPELLANT'S WAIVER OF HIS RIGHT TO A JURY TRIAL."
 I. {¶ 11} The First Assignment asserts the findings were against the manifest weight and sufficiency of the evidence.
 {¶ 12} In reviewing the records under the manifest weight of the evidence, a reviewing court is to examine the entire record, weigh the evidence and draw all reasonable inferences, consider the credibility of the witnesses and determine Awhether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. State v. Martin (1983),20 Ohio App.3d 172. See also, State v. Thompkins (1997),78 Ohio St.3d 380. The discretionary power to grant a new trial "should be exercised only in the exceptional case in which the evidence weights heavily against the conviction." Martin at 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230.
 {¶ 13} Statutes involved in this case are R.C. §2903.08(A)(1)(a) as to aggravated vehicular assault, R.C. §2903.08(A)(2) (vehicular assault), R.C. § 4511.19(A)(1) (OMVI), R.C. § 2901.22 (c) (reckless) and R.C. § 2401.01(a)(5) (serious physical harm). These code sections provide:
 {¶ 14} Revised Code § 2903.08(A) as to aggravated vehicular assault provides in part:
 {¶ 15} "(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause serious physical harm to another person or another's unborn in any of the following ways:
 {¶ 16} "(1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance."
 {¶ 17} Revised Code § 2903.08(A)(2) (vehicular assault) provides in part:
 {¶ 18} "(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause serious physical harm to another person or another's unborn in any of the following ways:"
 {¶ 19} "* * *
 {¶ 20} "(2) In one of the following ways:
 {¶ 21} "(b) Recklessly."
 {¶ 22} Revised Code § 4511.19(A)(1) (OMVI) provides in part:
 {¶ 23} "(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:
 {¶ 24} "(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them."
 {¶ 25} Such statute then proceeds to specify various concentrations of alcohol.
 {¶ 26} Revised Code § 2901.22 (c) (reckless) provides:
 {¶ 27} "(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 28} Revised Code § 2401.01(a)(5) (serious physical harm) provides:
 {¶ 29} "`Serious physical harm to persons' means any of the following:
 {¶ 30} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 31} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 32} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 33} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 34} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
 {¶ 35} There are certain aspects of Appellant's arguments that we must first address before proceeding to a consideration of the proof of violation of R.C. § 4511.19, which is necessary to support the conviction of aggravated vehicular assault.
 {¶ 36} Appellant assets that the testimony of the eyewitness as to reckless driving and speed of Appellant (Tr. 168-187) was fantastic and without credibility.
 {¶ 37} As stated, the trier of the facts judges the credibility of the witnesses, not this court in its review.
 {¶ 38} This testimony, together with the consequences of the collision to the vehicle which Appellant struck, easily supports the acceptance of excessive speed and recklessness.
 {¶ 39} In addition, Appellant describes this as an unavoidable accident. Accidents caused by violation of a signal light, regardless of the manner of operation of the vehicle are not unavoidable and such statements tend to lessen the serious consideration of the appeal.
 {¶ 40} Another point which Appellant attempts to present is that the occupants of the Oldsmobile did not suffer serious harm.
 {¶ 41} This argument is so lacking in merit that it is hardly worth discussing. However, the testimony of the driver, Joyelle Sumpter was to the effect that she had glass in her eye, experienced difficulty in moving, was hospitalized for a week, had bruised ribs, her intestines were moved and that extensive pain occurred which still remains.
 {¶ 42} The passenger, Ms. Bradford, was unconscious after the collision, had a fractured pelvis, bleeding of the brain, a ruptured spleen and other injuries including difficulty in walking after release from the hospital and that she still has ongoing pain.
 {¶ 43} These resulting conditions constitute serious physical harm.
 {¶ 44} Appellant is fortunate that a substantial risk of death without death was the result of his conduct.
 {¶ 45} The manifest weight of the evidence and sufficiency thereof supports the convictions of vehicular assault.
 {¶ 46} The proof as to the violation of R.C. § 4511.19
presents more credible arguments.
 {¶ 47} No field tests were performed at the scene. No breath test followed and Appellant refused to submit to a blood draw at the hospital (Tr. 116-117).
 {¶ 48} Testimony as to violation of such statute was as follows:
 {¶ 49} Officer Diels: (Tr. 114):
 {¶ 50} "Q. Did you notice anything about him when you come [SIC] up and you started talking with him, his condition or anything about his appearance?
 {¶ 51} "A. Yes. I could smell a strong odor of alcohol about his person.
 {¶ 52} "Q. Strong odor of alcohol, you said?
 {¶ 53} "A. Yes. I did ask him if he drank any beers. He did state that he had a couple beers."
 {¶ 54} Cybil Dundon: (Tr. 120-121):
 {¶ 55} "Q. Okay. Did you ask him whether or not he had had any alcohol to drink that evening?
 {¶ 56} "Yes, I did.
 {¶ 57} "Q. And what did he respond?
 {¶ 58} "A. He said something to the effect of I had a couple beers or a few beers or something to that effect. I quoted it in my notes. I don't recall the exact wording."
 {¶ 59} Cybil Dundon continues: (Tr. 121):
 {¶ 60} "Q. What does your notes say?
 {¶ 61} "A. Says he admits to, quote, a few beers, end quote.
 {¶ 62} "Q. A few beers?
 {¶ 63} "A. Uh-huh."
 {¶ 64} Officer Harless: (Tr. 126):
 {¶ 65} "Q. And what did you notice?
 {¶ 66} "A. I noticed when I got into the cruiser after directing traffic that I smelled a strong smell of an alcoholic beverage in our cruiser.
 {¶ 67} "Q. Did you have an opportunity to observe anything else about this individual's condition?
 {¶ 68} "A. His eyes appeared to be glassy.
 {¶ 69} Dr. Genesiso Serri:
 {¶ 70} "Q. And what were your physical findings, doctor?
 {¶ 71} "A: Physical findings were he was awake and talking, his vital signs were normal. I saw a little bruise and scrape over his right knee.
 {¶ 72} "Other than that, everything else appeared grossly normal.
 {¶ 73} "Q: So you found him to be alert?
 {¶ 74} "A: Yes.
 {¶ 75} "Q: And he was, would you describe for the jury his manner of speech?
 {¶ 76} "A: He was talking to me in full sentences. That's about all I put I think about his speech.
 {¶ 77} "Q: Okay. Have you ever seen people in the emergency room who were under the influence of alcohol?
 {¶ 78} "A: Routinely.
 {¶ 79} "Q: And does their speech ramble on at times?
 {¶ 80} "A: At times.
 {¶ 81} "Q: Did you notice he was speaking to you in full sentences though?
 {¶ 82} "A: Correct.
 {¶ 83} "* * *
 {¶ 84} "Q: And you had seen people, you have given this exam to people before and their eyes have been red or bloodshot; correct?
 {¶ 85} "A: Correct.
 {¶ 86} "Q: Did you notice, would you have noted on your record that his eyes were glassy, red, and/or bloodshot?
 {¶ 87} "A: Usually, yes.
 {¶ 88} "* * *
 {¶ 89} "Q: "Okay. Now, you did make a notation here about nystagmus, did you not?
 {¶ 90} "A: I did.
 {¶ 91} "Q: Would you explain what that term is for the jury?
 {¶ 92} "A: Nystagmus is involuntary eye movement that can be brought on by a variety of conditions.
 {¶ 93} "Q: Now, this was the case where Mr. Joy informed you that there was some alcohol; correct?
 {¶ 94} "A: He did.
 {¶ 95} "Q: Okay. Did you make a notation — you made a notation there, did you now, that he had alcohol on his breath?
 {¶ 96} "A: Yes I did.
 {¶ 97} "Q: Okay. So he voluntarily told you that, correct?
 {¶ 98} "A: Correct.
 {¶ 99} "Q: He told you he had a few?
 {¶ 100} "A: That's what he said.
 {¶ 101} "Q: Sir?
 {¶ 102} "A: Yes, he did. Sorry.
 {¶ 103} "* * *
 {¶ 104} "Q: All right. Now, the nystagmus, isn't that — doesn't that evidence to you among other things with the alcohol involved that that would involve some interruption in normal flow or movement of the eye?
 {¶ 105} "A: Correct.
 {¶ 106} "Q: Typically, what would one see when alcohol is present in the bloodstream and you have given his examination?
 {¶ 107} "A: It varies on how much alcohol is involved. Somebody that had a few drinks, you might not see anything.
 {¶ 108} "This is a test that was not abnormal until the alcohol level gets up there, two to three times normal range, normal legal range. I guess there is no normal medical range.
 {¶ 109} "Q: Typically you will see the jerking of the smooth pursuit of the eye, is that correct?
 {¶ 110} "A: Correct.
 {¶ 111} "Q: That evidences to you that alcohol is present?
 {¶ 112} "A: A large amount.
 {¶ 113} "Q: Okay. And you do that for both eyes?
 {¶ 114} "A: You are looking at both eyes when you have them track, yes.
 {¶ 115} "Q: And you didn't see any evidence of that when you were tracking the eye of Mr. Joy?
 {¶ 116} "A: No, I did not.
 {¶ 117} "* * *
 {¶ 118} "Q: Sir, what are the effects generally of alcohol on a person's brain or nervous system?
 {¶ 119} "A: It is very variable to the amount that is taken in and the person's history of alcohol usage.
 {¶ 120} "Q: Okay. Generally the more alcohol that you consume, that has a more pronounced effect; is that correct?
 {¶ 121} "A: Correct.
 {¶ 122} "Q: What are some of those possible effects?
 {¶ 123} "A: Well, you lose your motor coordinations. You walk funny. You talk funny. Your eyes will often act funny. You can pass out.
 {¶ 124} "Q: Reaction time?
 {¶ 125} "A: Reaction time is slowed.
 {¶ 126} "* * *
 {¶ 127} :Q: With regard to this nystagmus that you are talking about — I don't know if I am saying that correctly — could someone be under the effect or be impaired by alcohol and still not have this nystagmus to some degree?
 {¶ 128} "A: Yes."
 {¶ 129} In this case we are not concerned with whether probable cause was present to arrest based upon some indicia of alcohol consumption but whether a sufficient basis of being under the influence has been proven beyond a reasonable doubt by the State.
 {¶ 130} Here we have no tests but only the indication of an odor of alcohol and one officer noting glassy eyes while the other officer did not.
 {¶ 131} In opposition to this, testimony was presented as to coherency of Appellant and also a successful nystagmus test.
 {¶ 132} No evidence as to slurred speech, red eyes, difficulty in walking or other indicia of operating Appellant's vehicle under the influence was offered.
 {¶ 133} The odor of alcohol, glassy eyes and consumption admission could easily have justified probable cause.
 {¶ 134} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991)61 Ohio St.3d 259.
 {¶ 135} We are not judging the credibility of the witnesses in reaching this conclusion as such is not a subject of review by this Court. State v. Jamison (1990), 49 Ohio St.3d 182.
 {¶ 136} We find insufficient evidence presented as to Appellant operating his vehicle under the influence of alcohol and therefore sustain the First Assignment of Error as to the two counts of aggravated vehicular assault and the misdemeanor charge of operating such vehicle under the influence but reject the First Assignment as to the two jury convictions of vehicular assault.
 II. {¶ 137} The Second Assignment maintains a denial of Constitutional protections due to ineffective legal representations.
 {¶ 138} The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064,80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373; State v. Combs, supra.
 {¶ 139} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley,42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 140} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.Id. It is with this framework in mind that we address the instances of alleged ineffectiveness of counsel raised by appellant in the instant case.
 {¶ 141} The only action attributed to trial counsel involved the waiver of a jury trial as to the aggravated vehicular assault charges and the OMVI misdemeanor.
 {¶ 142} Due to our ruling as to the First Assignment of Error, this Assignment is moot as is the Third Assignment of Error.
 {¶ 143} This cause is affirmed as to the two counts of vehicular assault and the suspension of driving privileges for refusal of the blood test.
 {¶ 144} It is reversed as to the two counts of aggravated assault with a vehicle and the operating of a vehicle under the influence.
 {¶ 145} Such counts which were submitted to a bench trial are vacated.
 {¶ 146} Costs to be divided equally between Appellant and Appellee.
Boggins, J. Gwin, P.J., concurs.
Farmer, J. dissents without opinion.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed in part and reversed in part.
Costs to be divided equally between Appellant and Appellee.