OPINION *Page 2 
{¶ 1} Defendant-appellant Travis Croston appeals his convictions and sentences in the Stark County Court of Common on three counts of Aggravated Vehicular Assault, felonies of the third degree in violation of R.C. 2903.08(A)(1); three counts of Vehicular Assault, felonies of the fourth degree, in violation of R.C. 2903.08(A)(2); one count of Failure to Stop After an Accident, a felony of the fifth degree in violation of R.C. 4949.02; and one count of Operating a Vehicle While Under the Influence (OVI), a misdemeanor of the first degree, R.C. 4511.19(A)(1)(a). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} On July 7, 2007, appellant, Brook Duplain, Justin Taylor, Danny Edwards and Kenneth Wohlheter, attended the wedding of high school friends. Mr. Edwards, Mr. Taylor and Ms. Duplain rode to the wedding and reception with Nicole Trexel, Mr. Edwards date for the evening. Mr. Wohlheter was employed as a Carroll County deputy sheriff at the time though he was not on duty on the night of the wedding.
 {¶ 3} The evening started out with a church ceremony around 4:00 p.m. When the ceremony was finished, about 15-20 people went to a local restaurant before going to the wedding reception. There the group, including appellant, drank margaritas for about an hour and a half. Appellant was seen with a glass in front of him. While no one actually observed appellant put a drink to his lips, Ms. Duplain was fairly certain that appellant was drinking at the restaurant.
 {¶ 4} The group, including appellant, arrived at the wedding reception around 6:00 p.m. Appellant was observed with drinks in his hand by several wedding *Page 3 
attendees. Ms. Duplain and appellant went up to the bar and "did a shot." Ms. Duplain saw appellant with a glass of wine and mixed drink in his hands at the same time. Each time Danny Edwards saw appellant during the reception, appellant had a drink in his hand. By the end of the evening appellant sounded drunk to Edwards because he was slurring his speech and he had the appearance of being drunk. Kenneth Wohlheter saw appellant with a drink in his hand at the reception and he "always had one in front of him."
 {¶ 5} Around midnight when it was time to leave, Duplain, Taylor and Edwards noticed that their ride, Nicole Trexel, had left the reception early and in essence, stranded the three at the reception hall. Appellant did not want to take the group home but did so after his best friend, Justin Taylor, convinced him that they did not have another way to get home. With appellant driving, and Duplain, Taylor and Edwards as passengers, appellant pulled out of the parking lot and headed down 44th Street towards Cleveland Avenue.
 {¶ 6} Appellant was speeding while passing other cars. He ran a stop sign while continuing to travel at a high rate of speed toward the intersection of 44th Street and Cleveland Avenue. Kenneth Wohlheter was in the left turn lane on 44th Street waiting to turn onto Cleveland Avenue. He thought appellant's vehicle was going to hit his vehicle. Mr. Wohlheter watched appellant's car run the red light at the intersection, go through a stop sign and become airborne finally crashing into a truck and a telephone pole. He never saw any brake lights.
 {¶ 7} The appellant and Mr. Taylor tried to get Ms. Duplain and Mr. Edwards out of the vehicle, but were unable to do so. Mr. Wohlheter was the first to arrive at the *Page 4 
scene. He heard appellant tell the passengers to get out of the car while at the same time trying to make a telephone call. Mr. Wohlheter told appellant there was no way the passengers could get out of the car. Appellant appeared to have glossed over eyes and was upset, but was able to run from the scene.
 {¶ 8} Deputy Clifford Hall was dispatched to the scene of a traffic crash that occurred at the corner of Harrison Avenue and 44th Street, Plain Township, Ohio. When he arrived, he saw a white car crashed into a telephone pole on the north side of 44th Street. It appeared to Deputy Hall that the white car hit the telephone pole, and then the truck parked in a driveway. Deputy Hall learned from witnesses that the driver of the car was its owner, the appellant. Appellant, however, was not at the scene of the crash as he had fled.
 {¶ 9} All the passengers were injured. Ms. Duplain sustained the most serious injuries with a fractured vertebra, cuts requiring stitches and permanent knee damage.
 {¶ 10} After Ms. Duplain was extricated from the car and the ambulance was called to take the injured passengers to the hospital, Deputy Hall and Deputy Harry Haines, accompanied by a tracking dog, went looking for appellant. About 45 minutes later, at the intersection of 29th Street and Harrison, appellant was spotted running across the street. Deputy Haines called for appellant to stop and get on the ground or he would release the dog. Appellant complied, got on the ground and was placed into custody.
 {¶ 11} Deputy Haines asked appellant why he ran from the scene of the crash leaving three injured passengers. Appellant replied that he did not know what he [Deputy Haines] was talking about. Appellant told Deputy Hall that he was not in any *Page 5 
crash and was walking home from a wedding reception. Then, he told Deputy Hall and the paramedics that his injuries were received when the deputies slammed him to the ground and beat him up.
 {¶ 12} Appellant was bleeding from the head and both deputy sheriffs who observed him described signs of alcohol consumption.
 {¶ 13} "[Deputy Hall]: Talking with [appellant], he was bleeding from the, from the head. While talking to him I could smell a strong odor of alcoholic beverages on his breath. His eyes were bloodshot and glassy. His speech was slurred."
 {¶ 14} It was the opinion of Deputy Hall that appellant was intoxicated. His opinion was based upon appellant's appearance, the odor of alcohol and his argumentative demeanor.
 {¶ 15} Similarly, Deputy Haines observed appellant's signs of intoxication. He testified that there was an odor of alcohol about appellant's person, he had cottonmouth and his eyes were red and bloodshot.
 {¶ 16} Appellant was taken to Mercy Medical Center for treatment of his head wounds and complaints of injuries to his left wrist. Tammi Fessler, a registered nurse, recorded his complaints around 2:11 a.m. Ms. Fessler observed that appellant smelled heavily of alcohol. In her opinion, appellant was intoxicated.
 {¶ 17} The emergency room physician, Judy Wozniak, M.D., refused to discharge appellant unless he had a "sober ride" home. While Dr. Wozniak did not observe any signs of clinical or neurological impairment — appellant was oriented to time, person and place — Dr. Wozniak opined that you could have an alcohol level greater than .08 without being clinically impaired. *Page 6 
 {¶ 18} Appellant refused to take a blood test and refused to sign any medical documents, telling Nurse Fessler that his lawyer told him not to sign and that he was "suing you guys."
 {¶ 19} On September 19, 2007, the Stark County Grand Jury indicted appellant on three counts of aggravated vehicular assault, three counts of vehicular assault, failure to stop after an accident, and operating a vehicle under the influence of alcohol, a drug of abuse or a combination.
 {¶ 20} On March 25, 2008, the appellant waived his right to a trial by jury both in writing and on the record. After the presentation of evidence, the Trial Court found appellant guilty as charged and deferred sentencing to April 9, 2008. Ultimately, the Trial Court sentenced the appellant to an aggregate one (1) year prison term. He further suspended the appellant's license for two (2) years. The imposition of the sentence was stayed pending appeal.
 {¶ 21} Appellant timely appealed, raising as his sole assignment of error:
 {¶ 22} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN ITS FINDING OF GUILTY BECAUSE IT IS CONTRARY TO THE CONTROLLING LAW IN STATE V.JOY, AND BECAUSE THE COURT UTILIZED THE WRONG STANDARD."
 I. {¶ 23} Appellant's sole concern in the case at bar is with his conviction for the OVI offense.[1] Without a finding that he had operated a motor vehicle under the influence, appellant argues, there is insufficient evidence to support his conviction for aggravated vehicular assault. *Page 7 
 {¶ 24} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546 (stating, "sufficiency is the test of adequacy"); State v. Jenks (1991), 61 Ohio St.3d 259 at 273,574 N.E.2d 492 at 503. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781; Jenks, 61 Ohio St.3d at 273, 574 N.E.2d at 503.
 {¶ 25} Weight of the evidence addresses the evidence's effect of inducing belief. State v. Wilson, 713 Ohio St.3d 382, 387-88,2007-Ohio-2202 at ¶ 25-26; 865 N.E.2d 1264, 1269-1270. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? Even though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings." State v. Wilson, supra. However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v Thompkins, supra,78 Ohio St.3d at 387. (Quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, supra. *Page 8 
 {¶ 26} Employing the above standard, we believe that the State presented sufficient evidence from which the judge, as the trier of fact, could conclude, beyond a reasonable doubt, that appellant committed the offenses of operating a motor vehicle under influence of alcohol, drug abuse, or combination of them (OVI), and aggravated vehicular assault. Thus, the trial court did not err by finding appellant guilty.
 {¶ 27} Revised Code 2903.08(A) aggravated vehicular assault provides in part:
 {¶ 28} "(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause serious physical harm to another person or another's unborn in any of the following ways:
 {¶ 29} "(1) (a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance."
 {¶ 30} Appellant was convicted under R.C. 4511.19(A) (1) which requires the State to prove that appellant's driving was impaired through consumption of alcohol. R.C. 4511.19, states in pertinent part: "(A) (1) No person shall operate any vehicle, * * *, if, at the time of the operation, any of the following apply: (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them." Appellant was not charged with violating R.C. 4511.19(A)(1)(b), the "per se" section, which would have required the State to prove that he drove with a prohibited blood or breath alcohol content.
 {¶ 31} The phrase "under the influence of intoxicating liquor" has been defined as "[t]he condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, *Page 9 
conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle." Toledo v. Starks (1971), 25 Ohio App .2d 162, 166. See, also,State v. Steele (1952), 95 Ohio App. 107, 111 ("[B]eing `under the influence of alcohol or intoxicating liquor' means that the accused must have consumed some intoxicating beverage, whether mild or potent, and in such quantity, whether small or great, that the effect thereof on him was to adversely affect his actions, reactions, conduct, movements or mental processes, or to impair his reactions, under the circumstances then existing so as to deprive him of that clearness of the intellect and control of himself which he would otherwise possess"). See,State v. Henderson, 5th Dist. No. 2004-CA-00215, 2005-Ohio-1644 at ¶ 32. [Citing State v. Barrett (Feb. 26, 2001), Licking App. No. 00CA 47].
 {¶ 32} Circumstantial evidence will sustain a conviction for driving under the influence. State v. Neff, 104 Ohio App. 289, 148 N.E.2d 236
(1957); Starks, 25 Ohio App.2d at 163, 267 N.E.2d at 827. "Proof of factual circumstance concerning the defendant's conduct and activities preceding and following the driving of the vehicle [one] is charged to have driven while under the influence of intoxicating liquor is relevant to the ultimate issue of whether [a] defendant was driving a vehicle while under the influence of intoxicating liquor." Starks,25 Ohio App.2d at 163, 267 N.E.2d at 827.
 {¶ 33} The evidence produced at trial supports the inference that appellant's consumption of alcohol on the night in question adversely affected his actions, reactions, conduct, movement or mental processes or impaired his reactions to an appreciable degree, thereby lessening his ability to operate his car on the night in question. *Page 10 
 {¶ 34} This Court must afford the decision of the trier of fact concerning credibility issues the appropriate deference. We will not substitute our judgment for that of the trier of fact on the issue of witness credibility unless it is patently clear that the fact finder lost its way. State v. Parks, 3rd Dist. No. 15-03-16, 2004-Ohio-4023, at ¶ 13, citing State v. Twitty, 2nd Dist. No. 18749, 2002-Ohio-5595, at ¶ 114. "A fundamental premise of our criminal trial system is that `thejury is the lie detector.' United States v. Barnard, 490 F.2d 907, 912
(C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88,11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United States v. Scheffer
(1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.
 {¶ 35} Appellant relies on this Court's decision in State v. Joy, Stark App. No. 2005CA235, 2006-Ohio-1923 for the proposition that testimony regarding odors of alcohol by itself cannot establish that a driver is legally intoxicated or that his driving was impaired.
 {¶ 36} In Joy, the only evidence regarding the defendant's intoxication and impairment was "the indication of an odor of alcohol and one officer noting glassy eyes while the other officer did not."Joy at ¶ 130. Specifically, the court noted, "[n]o evidence as to slurred speech, red eyes, difficulty in walking or other indicia of operating Appellant's vehicle under the influence was offered." Id. at ¶ 132. Thus, the court *Page 11 
concluded that insufficient evidence supported the charges that the defendant violated R.C. 2903.08(A) (1) (a) by virtue of violating R.C. 4511.19(A) (1) (a).
 {¶ 37} In contrast, there was far more evidence presented at trial in the case at bar than mere testimony regarding an odor of alcohol.
 {¶ 38} The Supreme Court of Ohio has held that virtually any lay witness, without special qualifications, may testify as to whether or not an individual is intoxicated. City of Columbus v. Mullins (1954),162 Ohio St. 419, 421, 123 N.E.2d 422. In addition, a police officer may provide lay testimony as to his or her opinion regarding a defendant's lack of sobriety. State v. Holland (Dec. 17, 1999), Portage App. No. 98-P-0066, at 5.
 {¶ 39} In the case at bar, appellant was observed with drinks in his hand by several wedding attendees. Ms. Duplain and appellant went up to the bar and "did a shot." Each time Danny Edwards saw appellant during the reception, appellant had a drink in his hand. By the end of the evening appellant sounded drunk to Edwards because he was slurring his speech and he had the appearance of being drunk. Kenneth Wohlheter saw appellant with a drink in his hand at the reception and "always had one in front of him."
 {¶ 40} It was the opinion of Deputy Hall that appellant was intoxicated. Similarly, Deputy Haines observed appellant's signs of intoxication. Nurse Fessler observed that appellant smelled heavily of alcohol. In her opinion, appellant was intoxicated. The emergency room physician, Judy Wozniak, M.D., refused to discharge appellant unless he had a "sober ride" home.
 {¶ 41} Evidence of a refusal to submit to a chemical test can be used against a defendant at trial. See Columbus v. Mullins (1954),162 Ohio St. 419, 55 O.O. 240, *Page 12 123 N.E.2d 422; and Westerville v. Cunningham (1968), 15 Ohio St.2d 121,44 O.O.2d 119, 239 N.E.2d 40.
 {¶ 42} In the case at bar, appellant refused to submit to a blood test and refused to sign any medical documentation.
 {¶ 43} "Being involved in a single-vehicle accident with no significant outside factors is circumstantial evidence of erratic driving. Further, the fact that the driver leaves the scene of a single-vehicle accident, which occurs in the early morning hours, suggests that the driver may have been impaired at the time of the accident. In State v. Holland, the driver, who ultimately was convicted of OVI, left the scene of a single-vehicle accident that occurred about 4:00 a. m. In this matter, the fact that Heiney was injured in the accident, yet still failed to report it or seek medical assistance, further supports the conclusion that she was impaired at the time of the accident." State v. Heiney, Portage App. No. 2006-P-0073, 2007-Ohio-1199
at ¶ 23.
 {¶ 44} In the case at bar, there was no dispute that the accident occurred because of excessive speed. The record conclusively establishes that appellant fled the scene of the accident. Appellant did sustain injuries and further, refused to sign any of the medical forms.
 {¶ 45} The trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the [trier of fact] may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, *Page 13 
the [trier of fact] need not believe all of a witness's testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964),176 Ohio St. 61, 67, 197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App. 3d 667, 607N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 46} In the case at bar, the judge heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.
 {¶ 47} Appellant's conviction for OVI and aggravated vehicular assault are supported by sufficient evidence. The testimony that appellant had been in attendance at events where alcohol was served and was being consumed beginning around 4:30 p.m.; testimony that appellant had been observed consuming alcohol at the wedding reception; the odor of alcohol on his breath; the refusal to submit to a chemical test; his bloodshot and glassy eyes; the single-vehicle accident; his denial that he had been in an accident and, further, that he had even been driving; his attempt to blame the officers for his injuries; the emergency room personnel's recording a strong odor of alcohol over one-hour after the accident, taken together, constitute sufficient evidence that appellant was impaired at the time of the accident.
 {¶ 48} Finally, appellant contends that the trial court, as the finder of fact, applied the wrong burden of proof to the evidence presented at trial. To the contrary, the trial court found that the State has proven the elements beyond a reasonable doubt. (T. at 226; 232-233). *Page 14 
 {¶ 49} Accordingly, appellant's sole assignment of error is denied.
 {¶ 50} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed.
 Gwin, P.J., Farmer, J., and Delaney, J., concur. *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed. Costs to appellant.
[1] Appellant does not argue that the evidence was insufficient to support a finding that he caused serious physical harm to another person. *Page 1