OPINION
{¶ 1} Defendant-appellant, Danny Pickens (hereinafter "Pickens"), appeals the judgment of the Marion County Court of Common Pleas, finding him guilty of Intimidation of a Witness in a Criminal Case, a felony of the third degree in violation of R.C. 2921.04(B) and Retaliation, a felony of the third degree in violation of R.C. 2921.05(A).
 {¶ 2} On August 4, 2003, Pickens and his then girlfriend, Caleese Fryson (hereinafter "Fryson"), went to the Sundance Lounge in Marion, Ohio. During the evening, Pickens had a physical altercation with another patron, Danny Belcher. As a result of the incident, Belcher was injured. Ten days later, on August 14, 2003, Fryson went to the Marion Police Department and reported that Pickens was the one who had assaulted Belcher. On August 27, 2003, the Marion County Grand Jury indicted Pickens on two counts of Felonious Assault and two counts of Intimidation of a Witness, for alleged threats made to Fryson, and issued a warrant for his arrest. The arrest warrant was not served on Pickens, however, until September 30, 2003.
 {¶ 3} On September 15, 2003, Pickens went to Fryson's house in Marion, Ohio at approximately 6:30 a.m. Following a conversation with Fryson, Pickens hit the front window of Fryson's residence, causing it to break.
 {¶ 4} Following his arrest on September 30, 2003, Pickens was arraigned by the trial court. In addition to the original four count indictment, Pickens was charged with one count of Intimidation of a Witness and one count of Retaliation stemming from the incident at Fryson's residence on September 15, 2003.
 {¶ 5} Following a trial on April 12, 2004, Pickens was found not guilty of the two counts of Felonious Assault and two counts of Intimidation of a Witness based on the August 4, 2003 incident at the Sundance Lounge. The jury, however, returned a verdict of guilty to the charges of Intimidation of a Witness and Retaliation based on Pickens' conduct on September 15, 2003 at Fryson's home.
 {¶ 6} It is from this conviction that Pickens appeals, setting forth five assignments of error for our review. For clarity of analysis, Pickens' first four assignments of error have been combined.
 ASSIGNMENT OF ERROR NO. I The record contains insufficient evidence to supportDefendantappellant's conviction for intimidation.
 ASSIGNMENT OF ERROR NO. II The record contains insufficient evidence to supportDefendant-Appellant's conviction for retaliation.
 ASSIGNMENT OF ERROR NO. III Defendant-appellant's conviction for intimidation is contrary to themanifest weight of evidence.
 ASSIGNMENT OF ERROR NO. IV Defendant-appellant's conviction for retaliation is contrary to themanifest weight of evidence.
 {¶ 7} Whether or not the state presented sufficient evidence is a question of law dealing with adequacy. State v. Thompkins (1997),78 Ohio St.3d 380, 386, 1997-Ohio-52. When reviewing a challenge to the sufficiency of evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259.
 {¶ 8} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.Thompkins, 78 Ohio St.3d at 387, citing State v. Martin (1983),20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the demeanor of the witnesses and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230.[1]
 {¶ 9} The crime of Intimidation is set forth in R.C. 2921.04 and states in pertinent part:
No person, knowingly and by force or by unlawful threat of harm to anyperson or property, shall attempt to influence, intimidate, or hinder thevictim of a crime in the filing or prosecution of criminal charges or anattorney or witness involved in a criminal action or proceeding in thedischarge of the duties of the attorney or witness.
The language of R.C. 2921.05, regarding retaliation is similar. R.C. 2921.05 states in pertinent part:
No person, purposely and by force or by unlawful threat of harm to anyperson or property, shall retaliate against a public servant, a partyofficial, or an attorney or witness who was involved in a civil orcriminal action or proceeding because the public servant, partyofficial, attorney, or witness discharged the duties of the publicservant, party official, attorney, or witness.
 {¶ 10} We have previously stated that while the statutory language is similar, each offense requires proof of an element that the other does not. See State v. Solomon, 3d Dist. No. 9-03-58, 2004-Ohio-2795. Intimidation requires some threat or coercion intended to inhibit future activity and retaliation requires an action taken in return for a past activity. Id. Intimidation and Retaliation are separate and distinct offenses and the commission of one crime does not, necessarily, result in the commission of the other. However, both Intimidation and Retaliation require that the conduct of the offender have a factual nexus to the underlying charges.
 {¶ 11} In these assignments of error, Pickens alleges that there was no evidence presented of any threat or coercion intended to inhibit future activity or that his act of breaking Fryson's window was in retaliation for Fryson giving information to the police. Although Pickens does not dispute that he broke Fryson's window, he contends that the September 15, 2003 incident was a matter involving the personal relationship between him and Fryson and was unrelated to Fryson's role as a witness in the criminal case against Pickens for the assault on Danny Belcher. Moreover, Pickens asserts that Fryson was not a credible witness and, due to the demise of their personal relationship, had a motive to lie.
 {¶ 12} At trial, only Pickens and Fryson testified about the events that occurred on September 15, 2003. Fryson testified that the night of September 14, 2003, Pickens called her and said "happy birthday, you dumb bitch." In response, she "started laughing and hung up the phone." The next morning, Pickens arrived at her house around 6:30 a.m. and demanded that she open the door for him. Fryson stated she walked over to the front window and asked Pickens what he wanted and he said "we need to talk." Fryson testified that she told Pickens she would not open the door, but she would talk to him through a window in the back of the house so that her neighbors would not be able to hear them. Fryson stated that Pickens refused this compromise and he hit her front window with a stick, causing the window to break.
 {¶ 13} Pickens' testimony differed from that of Fryson. Pickens testified that his daughter had been living with Fryson around the time of September 15, 2003. He stated that Fryson called him and said that his daughter had gotten into trouble and he needed to come pick her up. Pickens testified that after receiving Fryson's call, he drove from Elyria to Marion, approximately eighty miles, and arrived in Marion around 6:30 a.m. Pickens stated that when he arrived, his daughter was not at Fryson's house. He testified that he got angry with Fryson and hit the window, causing it to break.
 {¶ 14} After reviewing the record, including the trial transcript, we can not find that the prosecution established a connection between Pickens' conduct at Fryson's home on September 15, 2003 and the charges pending against him at the time to support either a conviction for Intimidation or Retaliation.
 {¶ 15} The evidence introduced indicated that when Pickens went to Fryson's residence on September 15, 2003, he made no reference to the pending criminal charges, the altercation with Danny Belcher or Fryson's statement to the police. There was no evidence that, in breaking Fryson's window, Pickens intended to intimidate or retaliate against Fryson for her cooperation with the police investigation of the incident at the Sundance Lounge on August 4, 2003. There was no testimony or other evidence that Pickens' reason for breaking Fryson's window was in any way related to her participation in the case against him. In fact, Fryson only testified that Pickens wanted "to talk" when he came to her home on September 15, 2003.
 {¶ 16} The only evidence that existed for the jury to infer that Pickens went to Fryson's home on September 15, 2003 with the intent to intimidate or retaliate against her were earlier threats that Pickens made to Fryson on or about August 4, 2003, at the time of the incident at the Sundance Lounge, wherein Pickens allegedly told Fryson, "I'll kill you before I let you send me to jail." However, we find that the record demonstrates this earlier threat was an insufficient basis for a finding of guilty for Intimidation and Retaliation for the events of September 15, 2003.
 {¶ 17} First, the evidence indicated that Fryson may not have found the earlier threat credible, as she drove Pickens to Toledo, Ohio the day after the threat was made. More importantly, the jury did not find the earlier threat credible, demonstrated by the fact that Pickens was indicted on two counts of Intimidation of a Witness for these earlier threats and the jury found him not guilty on both counts.
 {¶ 18} Without the evidentiary support of a credible threat made by Pickens to Fryson, we find that it was unreasonable for the jury to find Pickens guilty for Intimidation and Retaliation for the events at Fryson's residence that occurred on September 15, 2003. Moreover, in light of the personal relationship between Pickens and Fryson, coupled with the fact that Pickens' daughter had been living with Fryson, there was an alternate explanation for Pickens' visit to Fryson, unrelated to Fryson's involvement in the incident at the Sundance Lounge.
 {¶ 19} Based on the testimony of Fryson and Pickens, which was the only material evidence in the record before us regarding the events of September 15, 2003, we find that the trier of fact clearly lost its way and created a manifest miscarriage of justice requiring that the judgment be reversed. We hold that the evidence did not establish that Pickens' conduct on September 15, 2003, amounted to a knowing attempt to influence, intimidate, or hinder Fryson in the discharge of her duties as a witness. See R.C. 2921.04. Additionally, we hold there was insufficient evidence, in the record before us, for any rational trier of fact to find that Pickens purposely, by unlawful threat of harm, retaliated against Fryson because Fryson supplied information to the police about the assault on Danny Belcher at the Sundance Lounge. See R.C. 2921.05. Even if the jury completely disregarded the testimony of Pickens about the events of September 15, 2003, Fryson's statements failed to support a conviction for either Intimidation of a Witness or Retaliation. Consequently, we find that Pickens' convictions for Intimidation and Retaliation were both based on insufficient evidence and against the manifest weight of the evidence.
 {¶ 20} Pickens' first, second, third and fourth assignments of error are, therefore, sustained.
 ASSIGNMENT OF ERROR NO. V Defendant-appellant received prejudicially ineffective assistance ofcounsel in violation of his Sixth and Fourteenth Amendment rights, aswell as his rights under Section 10, Article I, Ohio Constitution.
 {¶ 21} It is well-settled that in order to establish a claim of ineffective assistance of counsel, appellant must show two components: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defense.State v. Kole (2001), 92 Ohio St.3d 303, 306. To warrant reversal, the appellant must show that there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. Strickland v. Washington (1984), 466 U.S. 668.
 {¶ 22} In this assignment of error, Pickens contends that his trial counsel was ineffective in failing to file a Criminal Rule 29 Motion at the close of the prosecution's case. Even assuming, arguendo, that the failure to file such a motion constituted ineffective assistance, in light of our determination regarding Pickens' first four assignments of error, we need not address this argument.
 {¶ 23} Pickens' fifth assignment of error is overruled.
 {¶ 24} Having found error prejudicial to appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment Reversed and Cause Remanded.
 Shaw and Bryant, J.J., concur.
[1] We note that Pickens failed to file a motion for acquittal at trial. The state argues that this failure precludes Pickens from raising the errors regarding the sufficiency of the evidence. However, the failure to move for an acquittal at trial did not waive Pickens' right to raise a sufficiency of the evidence argument on appeal. State v. Jones,91 Ohio St.3d 335, 346, 2001-Ohio-57. A defendant preserves his right to object to any alleged insufficiency of the evidence when he enters a "not guilty" plea. Jones, 91 Ohio St.3d at 346, 744. Finding that Pickens pled not guilty to the charges herein, we will address his arguments regarding both sufficiency and weight of the evidence.