The STATE of Ohio, Appellee,

v.

SIMMS, Appellant.

[Cite as *State v. Simms,* 165 Ohio App.3d 83, 2005-Ohio-5681.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 05CA10.

Decided Oct. 24, 2005.

84

Ric Daniell, for appellant.

P. Eugene Long II, Pickaway County Prosecuting Attorney, for appellee.

McFARLAND, Judge.

{¶ 1} Appellant, Danny L. Simms, appeals the jury verdict rendered in the Athens County Common Pleas Court finding him guilty of intimidation, a felony of the third degree, contrary to R.C. 2921.03. Appellant contends that his conviction was (1) against the manifest weight of the evidence and (2) not supported by sufficient evidence. Because we find that the jury verdict was supported by sufficient evidence and was not against the manifest weight of the evidence presented at trial, we disagree with appellant's assigned errors and accordingly affirm appellant's conviction.

{¶ 2} Appellant and appellee agree on the following facts, which are the subject of this appeal. On September 13, 2004, the appellant was on the property of his residence when Sgt. Flickinger and Lt. Smith of the Athens County Sheriff's Department went to the property for the purpose of serving civil arrest warrants on appellant and his son, Danny Simms II. After learning from Jeff Williams, a neighbor, that appellant was armed and provisioned for three or four days, the officers proceeded to a trailer on the property where they talked with appellant's wife.

{¶ 3} Lt. Smith testified during trial that, after being informed that appellant was in a cupola on top of an asphalt hopper, he saw appellant "holding a rifle sort of this way." The officers approached the hopper and spoke with appellant. Lt. Smith testified that he recalled that appellant stated, "No tricks. If you don't charge the hopper and if you don't charge inside that trailer there won't be any problems, there won't be any shots fired." After speaking with appellant for approximately five minutes, the officers left.

{¶ 4} When asked if he felt threatened by what occurred, Lt. Smith stated that he did, and Sgt. Flickinger testified similarly. Sgt. Flickinger stated that once he learned that appellant had a weapon, he felt that they were "at his mercy. There was nowhere to go. I mean we was in the line of fire if he had intentions of firing. I had no options. We decided at that point in time to approach him and keep a dialect going." Sgt. Flickinger stated that appellant told him, as he approached the asphalt hopper, "Do not approach the trailer where my wife or my son is and I won't open fire if you do not try to rush that." The officers stated that appellant said either that he would fire shots or would open fire.

{¶ 5} Neither officer testified that he identified himself to appellant as a law enforcement official or that they were on the property to serve an arrest warrant.

Appellant, on direct examination, stated that he told the officers that he had an old rifle and a handgun. After a period of some ten hours, appellant surrendered peacefully. While these facts have been agreed upon by both the appellant and appellee and have been confirmed by this court, we believe that there are additional, pertinent facts and testimony that are determinative, which will be discussed in connection with the applicable legal analysis.

{¶ 6} As a result of these events, appellant was arrested and subsequently indicted on the following charges: (1) intimidation, a felony of the third degree, contrary to R.C. 2921.03, (2) resisting arrest, a felony of the fourth degree, contrary to R.C. 2921.33(C), (3) inducing panic, a felony of the fourth degree, contrary to R.C. 2917.31, and (4) obstructing official business, a felony of the fifth degree, contrary to R.C. 2921.31. After a four-day jury trial, appellant was acquitted of resisting arrest, inducing panic, and obstructing official business; however, he was convicted of intimidation and sentenced to be incarcerated for a period of three years. It is from this conviction that appellant now brings his appeal, assigning the following errors for our review:

{¶ 7} "I. Appellant's conviction was against the manifest weight of the evidence.

{¶ 8} "II. Appellant's conviction was not supported by sufficient evidence."

{¶ 9} As appellee correctly sets forth, weight and sufficiency of evidence are distinct legal concepts that are both qualitatively and quantitatively different. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, paragraph two of the syllabus. Thus, we will address these arguments separately, and, for ease of analysis, we will address them out of order. When reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court's role is to examine the evidence admitted at trial to determine whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. The court's evaluation of the sufficiency of the evidence raises a question of law and does not permit the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 10} R.C. 2921.03, outlawing intimidation, provides in section (A) that "[n]o person, knowingly and * * * by unlawful threat of harm to any person * * * shall attempt to influence, intimidate, or hinder a public servant * * * in the discharge of the person's duty." Here, appellant contends that the state failed to introduce sufficient evidence to prove that he knowingly threatened a public

servant in the discharge of his duty. In support of this argument, appellant contends that because the officers did not identify themselves as public servants and did not inform appellant that they were there to arrest him pursuant to a warrant, that the knowledge element of the offense was not proven. Appellant also seems to place much emphasis on the fact that no one was harmed during the events in question and specifically argues in his brief that no deadly force or any force was used.

{¶ 11} "Knowingly" is defined by R.C. 2901.22(B), which provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶ 12} As part of the state's case, Lt. Smith testified that he saw appellant holding a rifle in the asphalt hopper. He further testified that appellant stated, "No tricks, something to the effect of if you don't charge the hopper and if you don't charge inside that trailer there won't be any problems, there won't be any shots fired." He qualified this testimony later by stating, "I don't remember specifically what he said, but the gist of what I got of it was he was going to shoot, he would shoot whoever charged that trailer or the hopper." Additionally, Sgt. Flickinger testified, "At the corner of the trailer he [appellant] advised us, you know, do not approach the trailer where my wife or my son is and I won't open fire if you do not try to rush that. If we didn't try to approach the tower and attack him he said he would not shoot us."

{¶ 13} Aside from these statements, the most compelling evidence came from the appellant himself. On direct examination, the following exchange took place between appellant and his own counsel and illustrates that appellant was well aware of the officers' reasons for visiting his property:

Q.  During this five minute discussion did the officers ever bring up the fact that they were there to arrest you?

A.  No. They just wanted to know how they could solve the problem.

Q.  Did they ever, what was the problem as they perceived it?

A.  They wanted to open the ditch.

Q.  Alright. So were you thinking that the officers were there because of some reason other than the arrest warrant?

A.  Well yeah. They wanted to open the ditch. *I'm quite certain they was there to arrest me. I'm not going to lie. I just ain't going to do it. I perceived that they were there to arrest me. But they didn't tell me that they had a warrant for my arrest, they just told me how can we solve this problem.* They were very decent.

Q. Okay. Well since they didn't arrest you the problem apparently, either problem, the ditch or your warrant, wasn't solved then and they departed?

A. Yeah. We discussed a little bit. They asked me what I wanted. I told them I wanted seventy two hours. I explained my purpose to them. At this point I want you to understand that they did not see me. * * * *I couldn't let them see me. I didn't have a weapon and they'd have arrested me.* (Emphasis added.)

{¶ 14} In his brief, appellant cites *State v. Jackson,* Franklin App. No. 02AP-867, 2003-Ohio-6183, 2003 WL 22725287, which held that in order for an individual to be convicted of intimidation under R.C. 2921.04, it must be proven that there was an intention to use threats to gain an expected result, such as discouraging the filing of criminal charges. R.C. 2921.04 deals with intimidation of a witness or victim, rather than intimidation of a public servant in the discharge of his official duty. However, we find the reasoning of *Jackson* equally applicable to conduct violative of R.C. 2921.03. In the instant case, appellant is apparently arguing that he did not make these threats in order to gain an expected result. In fact, appellant, somewhat illogically, contends that such proof is not contained in the record. To the contrary, the following exchange illustrates this very conduct on the part of appellant:

Q. Now up to this point you hadn't told anybody that you had a gun, you hadn't told anybody that you were going to shoot them.

A. Oh no.

Q. You hadn't told anybody that they were in danger. And yet the law enforcement officials continued to talk about a hostage situation. I'm just trying to understand.

A. You're trying to figure out where they got that perception?

Q. Yeah.

A. Well I'm not going to lie, again. When I was talking to the two officers standing on the tank I told them that I had no explosives, no automatics, no weapons, *all I had was an old rifle and a handgun. Had I not told them something, they would have arrested me right there on the spot. I couldn't let them come up on top of the tank because they'd have seen I didn't have have any way to carry off this seventy two hours.* But I made it very clear to them they were in no danger. They were not upset. (Emphasis added).

Appellant further testified as follows:

Q. Now I believe you said yesterday you admitted to Sgt. Flickinger and Lt. Smith that you had a rifle and a gun with you.

A.  Yes sir, I admitted that because I'd already disposed of them and *I couldn't let them think that I didn't have anything or they'd just walk up there and destroy my ability to resist.*

Q.  Alright. You had to make that point, I have weapons, so that you had your bargaining power.

A.  I also made the point that they were in no danger whatsoever.  And they went away laughing.  Yes, I did make that point.

Q.  And why did you make that point?

A.  So I could get my seventy two hours.  (Emphasis added).* * *

Q.  You're charged with making threats to the officers.

A.  I never threatened your officers.

Q.  I believe you already said that you had to let them know you had a gun.

A.  Yes sir, I did.  I had to do that.

Q.  And you would use it if they attempted to go after your son or your wife.

A.  Oh yes, I certainly would.  If I had a weapon.

Q.  And you don't consider that a threat?

A.  Yes sir, I consider that a threat.  I consider it a legitimate statement.

{¶ 15} It could not be clearer to this court that the record contains not only sufficient evidence, but ample evidence, for a jury to conclude that appellant was guilty of intimidation.  In *State v. Wilburn,* Cuyahoga App. No. 82573, 2003-Ohio-6495, 2003 WL 22862804, the appellant was convicted of intimidation for repeatedly threatening to get a gun and kill the officers who were transporting him from the hospital to the police station.  In that case, the appellant claimed that the statements he had made to the officers could not constitute threats since he did not have a gun and could not have actually carried out the threats.  The court, however, affirmed the appellant's conviction, based on the reasoning that "[i]t is the unlawful threat of harm, however, and not actual harm, that serves as a basis for the offense of intimidation."  Id. at ¶ 32.

{¶ 16} Appellant's conduct in the present case is comparable to that in *Wilburn.*  Whether appellant was armed at the time he made the statements to the officers is completely irrelevant.  By his own admission, appellant, knowing that the officers were there to arrest him pursuant to an arrest warrant, informed the officers that he was armed in order to avoid arrest and succeed in his wish to have a 72–hour stand-off.  This testimony, if believed, would serve as sufficient evidence to support a conviction for intimidation as governed by R.C. 2921.03.  Accordingly, appellant's second assignment of error is without merit.

{¶ 17} Having determined that appellant's conviction is supported by sufficient evidence, we must now determine whether his conviction is against the

manifest weight of the evidence. The test for determining whether a conviction is against the manifest weight of the evidence is much broader than that used to examine the sufficiency of the evidence. *Martin,* 20 Ohio App.3d at 175, 20 OBR 215, 485 N.E.2d 717. In determining whether a conviction is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶ 18} An appellate court should vacate a conviction and grant a new trial only when the evidence weighs strongly against the conviction. Id. In making this review, the appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus.

{¶ 19} Here, appellant testified that although the officers discussed a ditch on his property, he knew that they were there to arrest him pursuant to a warrant. In order to avoid being arrested, appellant testified, he told the officers that he was armed, but that he would not shoot as long as they did not charge the trailer where his family was or the hopper where he was located. Appellant, by his own admission, testified that he considered these statements to be threats, but that he had to threaten the officers to get his 72 hours. Curiously, appellant also claims that he was never really armed, that he had no intentions of harming anyone, and that the officers were not upset by his statements.

{¶ 20} However, despite the inconsistencies in appellant's own testimony, we conclude that the same facts that overcome a sufficiency-of-the-evidence argument also overcome a manifest-weight argument. Upon careful review of the evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in finding appellant guilty of intimidation. We find substantial, competent, credible evidence upon which the jury could base its decision that appellant knowingly threatened to harm police officers in an attempt to intimidate them while they were in the discharge of their official duties.

{¶ 21} In light of the foregoing, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Therefore, we find that appellant's conviction

is not against the manifest weight of the evidence. Accordingly, we find that appellant's first assignment of error is also without merit and affirm the judgment of the trial court.

Judgment affirmed.

ABELE, P.J., and KLINE, J., concur.