DECISION AND JUDGMENT ENTRY
{¶ 1} Early one morning, David Dearth returned home to find a broken door and Ivan W. Thompson in the kitchen eating lasagna. Before the police arrived, Thompson "voluntarily" returned a bottle of prescription medication to Dearth. Based upon this incident, a jury found Thompson guilty of burglary. Now, Thompson contends that the trial court abused its discretion by refusing to grant a mistrial after Dearth testified that Thompson had a "previous history with sharp instruments." However, the court gave the jury a curative instruction to disregard the testimony, and nothing in the record rebuts the presumption that the jury followed this instruction. Therefore, the trial court's decision to deny Thompson's motion for a mistrial was not unreasonable, arbitrary, or unconscionable.
 {¶ 2} Thompson further contends that the State failed to produce sufficient *Page 2 
evidence to establish an essential element of a burglary offense, i.e. that he entered Dearth's home with "purpose" to commit a criminal offense. However, the State introduced evidence that Thompson took possession of Dearth's medications after breaking into his home. Such evidence, if believed, would convince the average mind beyond a reasonable doubt that Thompson had the requisite purpose to commit a criminal offense, i.e., theft by depriving Dearth of his medication. Accordingly, we affirm the trial court's judgment.
 I. Facts {¶ 3} A Ross County grand jury indicted Thompson on one count of burglary, in violation of R.C. 2911.12(A)(2). After Thompson pled not guilty, a jury trial produced the following evidence.
 {¶ 4} Dearth became acquainted with Thompson and his girlfriend in July 2007. While Dearth occasionally invited them into his home, they never had permission to enter in his absence. In December 2007, Dearth came home late at night to find Thompson in his kitchen. Someone had kicked in the side entrance to the home and tipped over the dresser blocking the door. After Dearth discovered Thompson in the process of heating a piece of lasagna in the microwave, he called the police. To keep Thompson in the house until they arrived, Dearth told Thompson that he needed a police report to show his landlord so that he would not lose his deposit when the landlord fixed the door. Dearth also told Thompson that he would lie to police and say that he and Thompson arrived at the home together and found the broken door.
 {¶ 5} While they waited for the police, Dearth told Thompson he could eat the lasagna. As Thompson ate, Dearth noticed that the medications he kept on the dresser *Page 3 
that had blocked the door were missing. Dearth told Thompson he wanted them back. Thompson removed the drugs from his coat pocket and placed them on Dearth's coffee table. After the police arrived, Dearth met them outside to explain the situation, and they arrested Thompson.
 {¶ 6} A jury found Thompson guilty of the burglary charge. After the trial court sentenced him, Thompson filed this appeal.
 II. Assignments of Error {¶ 7} Thompson assigns the following errors for our review:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REFUSED TO GRANT A MISTRIAL AS A RESULT OF IMPROPER AND PREJUDICIAL TESTIMONY.
 THE TRIAL COURT ERRED AND THEREBY DEPRIVED DEFENDANT-APPELLANT OF DUE PROCESS OF LAW BY ACCEPTING THE JURY'S GUILTY VERDICT, AS THE PROSECUTOR FAILED TO OFFER SUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT EACH AND EVERY ELEMENT OF THE OFFENSE OF BURGLARY.
 III. Denial of Mistrial {¶ 8} In his first assignment of error, Thompson contends that the court erred by denying his motion for a mistrial after the State offered inadmissible, prejudicial character evidence at trial. The grant or denial of a motion for mistrial rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, 182,510 N.E.2d 343. In a criminal proceeding, the trial court should not order a mistrial merely because of some intervening error or irregularity unless the substantial rights of the accused are adversely affected. State v.Nichols (1993), 85 Ohio App.3d 65, 69, 619 N.E.2d 80. This determination is also within the sound discretion of the trial court. Id. To constitute an *Page 4 
abuse of discretion, the trial court's decision must be unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157, 404 N.E.2d 144.
 {¶ 9} On direct examination, Dearth made a courtroom identification of Thompson as the intruder in his kitchen. Then, the following exchange occurred:
 [PROSECUTOR]: What was your feeling at this time?
 MR. DEARTH: Well, inwardly I was pretty upset, mad. But like I said,
 [Thompson] was standing there with something in his hand, and I knew somewhat about his previous history with sharp instruments.
 {¶ 10} Thompson immediately objected and asked if counsel could approach the trial judge. At the bench conference, the court initially sustained the objection. Thompson indicated that he did not feel a curative instruction could fix the damage from Dearth's testimony. After further discussion, which appears on the record as "inaudible," the court removed the jury from the courtroom and heard arguments on the statement's admissibility.
 {¶ 11} Thompson primarily contended that Dearth's testimony that he "knew somewhat about [Thompson's] previous history with sharp instruments" constituted highly prejudicial, inadmissible character evidence. The State argued that the statement was so vague that it did not imply that Thompson had attacked an individual. The State further argued that even if inadmissible, the statement was too vague to warrant a mistrial. The court found that the comment implied a history of violence and sustained the objection. However, over Thompson's objection, the court determined that a curative instruction would remedy any damage.
 {¶ 12} When the jury returned, the court gave the following instruction: *Page 5 
 Ladies and gentlemen, thank you for your patience. The Court has sustained the defense objection to a portion of this witness'[s] last answer and has stricken a portion of that answer that is as follows, ["]and I knew somewhat about his previous history with sharp instruments.["] You are not to consider that testimony as evidence for any reason and as I've stated earlier, you are not to draw any inferences from the fact that the Court has stricken this * * * from your consideration as evidence. Do you all understand that?
By affirmative nod, the jurors indicated that they understood the court's instruction.
 {¶ 13} Thompson contends that a curative instruction could not overcome the prejudicial impact of Dearth's unsolicited comment. When analyzing the propriety of a mistrial, we presume that the jury will follow the court's curative instructions concerning improper witness comments. State v. Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190,813 N.E.2d 637, ¶ 93. A party can rebut this presumption by showing that "the evidence could not have been ignored and that serious prejudice likely occurred." State v. Westwood, Athens App. No. 01CA50, 2002-Ohio-2445, ¶ 42.
 {¶ 14} Thompson argues that the jury could not ignore the suggestion that he was a violent man because the trial court highlighted it by holding a bench conference and removing the jury from the courtroom after Dearth made the comment. Under Evid. R. 103(C), the court has a duty to conduct proceedings, "to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." In this case, Thompson actually requested the bench conference. By granting Thompson's request and by removing the jury from the courtroom when the court determined that his objection warranted further discussion, the trial court fulfilled this duty.
 {¶ 15} Thompson also contends that his "fate * * * was sealed" when the trial judge repeated Dearth's improper testimony in the curative instruction. Given that Thompson *Page 6 
only objected to a portion of Dearth's testimony, the court could not give a curative instruction without telling the jury which portion of the testimony was stricken. Furthermore, we have found nothing in the record to suggest that the jury failed to ignore Dearth's isolated comment or that serious prejudice likely occurred because of it.
 {¶ 16} Because Thompson has not overcome the presumption that the jury followed the trial court's curative instruction, we conclude that the trial court did not abuse its discretion in denying his motion for a mistrial. Accordingly, we overrule Thompson's first assignment of error.
 IV. Sufficiency of the Evidence {¶ 17} In his second assignment of error, Thompson contends that the State failed to produce sufficient evidence proving all of the elements of the burglary charge. Specifically, Thompson contends that the State failed to prove that he trespassed in Dearth's home with the requisite purpose to commit a criminal offense.[1]
 {¶ 18} When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court's function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus (superseded by state constitutional amendment on other grounds). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id., citing *Page 7 Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Our evaluation of the sufficiency of the evidence raises a question of law and does not permit us to weigh the evidence. State v. Simms,165 Ohio App.3d 83, 2005-Ohio-5681, 844 N.E.2d 1212, ¶ 9, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 19} Thompson was convicted of burglary in violation of R.C. 2911.12(A)(2), which provides: "No person, by force, stealth or deception, shall * * * [trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]" The State contends that Thompson trespassed in Dearth's home with the purpose to commit the criminal offense of theft. A person commits theft when, with the purpose to deprive the owner of property, he knowingly obtains or exerts control over the property without the consent of the owner or a person authorized to give consent. R.C. 2913.02(A)(1). Under R.C. 2913.01(C)(1), the term "deprive" includes withholding property of another permanently.
 {¶ 20} Thompson argues that the State failed to produce sufficient evidence that he had the requisite "purpose" to commit a theft, i.e. to deprive Dearth of his medications or lasagna. "A person acts purposely when it is his specific intention to cause a certain result[.]" R.C. 2901.22(A). "Purpose and intent are synonymous." State v. Young, Scioto App. No. 07CA3195, 2008-Ohio-4752, ¶ 29, citing White v. Maxwell (1963),174 Ohio St. 186, 188, 187 N.E.2d 878. "The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence." Id., citing State v. Puterbaugh (2001), 142 Ohio App.3d 185, *Page 8 
189, 755 N.E.2d 359.
 {¶ 21} According to Thompson, Dearth testified that his medications were "displaced" when the chest of drawers blocking the door was knocked over. After Dearth heard what "sounded like pills moving in a bottle," he "voiced his thoughts to Mr. Thompson who immediately removed the bottle from his pocket and handed it to Mr. Dearth." Thompson emphasizes the fact that he offered no resistance in returning the pills and no explanation for his possession of them. He argues that the State did not refute the possibility that he picked up the medication "in a gesture of tidiness" after seeing it on the floor when he entered Dearth's home.
 {¶ 22} Thompson mischaracterizes Dearth's testimony. Dearth testified that he arrived home late at night to find Thompson in his kitchen, the side door to his home kicked in, and the dresser blocking the door knocked over. Thompson did not have permission to enter the home. Dearth never testified that he heard what "sounded like pills moving in a bottle"[2] and simply "voiced his thoughts" to Thompson. He actually stated that he realized his medications, normally kept on the dresser, were missing and told Thompson that he wanted them back. Only then did Thompson remove the drugs from his coat pocket and put them on Dearth's coffee table. Given the manner of Thompson's entrance and the fact that he maintained possession of Dearth's medications until confronted, a rational juror could conclude that the State proved beyond a reasonable doubt that Thompson trespassed in the home with the purpose to permanently deprive Dearth of his property.
 {¶ 23} Thompson also contends that the State failed to produce sufficient evidence *Page 9 
that he entered Dearth's home with the purpose to deprive him of the lasagna. Because Thompson's possession of Dearth's medications provides a sufficient basis to support the burglary conviction, we choose not to address this argument. It is moot. Accordingly, we overrule Thompson's second assignment of error.
 {¶ 24} Having overruled each of the assignments of error, we affirm the trial court's judgment.
JUDGMENT AFFIRMED. *Page 10 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. McFarland, J.: Concur in Judgment and Opinion.
[1] Neither party addresses the timing of an offender's intent to commit an offense or the continuing nature of a "trespass." However, seeState v. Fontes, 87 Ohio St.3d 527, 2000-Ohio-472, 721 N.E.2d 1037, at the syllabus, in that regard.
[2] During his opening statement, the prosecutor stated that Dearth heard "jiggling, kind of shaking, almost like pills in a pill bottle," but Dearth did not testify to this effect. *Page 1