[Cite as *State v. Tuck*, 2010-Ohio-4770.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

State of Ohio,                           :          Case No. 09CA3274

    Plaintiff-Appellee,              :

    v.                                     :          <u>DECISION AND</u>
                                                      <u>JUDGMENT ENTRY</u>
Dennis P. Tuck,                       :

    Defendant-Appellant.          :          **Released 9/21/10**
_____
APPEARANCES:

Richard M. Nash, Jr., Portsmouth, Ohio, for appellant.

Mark Kuhn, Scioto County Prosecutor, and Danielle M. Parker, Scioto County Assistant Prosecutor, Portsmouth, Ohio, for appellee.
_____
Harsha, J.

{¶1}   Dennis Tuck appeals his convictions for intimidation stemming from threats he made to two employees at the Southern Ohio Correctional Facility (SOCF). While being held at SOCF Tuck wrote letters to a case manager at the prison, Amy Haggy, in which he threatened to kill her after getting out of jail.  In a letter written to an attorney, he threatened to kill both Haggy and another case manager, Jennifer Haywood.  At a subsequent security hearing, Tuck approached Haywood and spat in her face.

{¶2}   On appeal, Tuck contends that the evidence was legally insufficient to convict him.  Specifically, he contends that the State failed to submit evidence demonstrating that he understood his threats and actions to constitute an attempt to influence, intimidate, or harass the case managers in the discharge of their public duties.  He contends that the evidence at best supports the conclusion that he was

venting frustration at two case managers who had angered him by actions in the past, i.e., retaliation. This is a permissible inference from the evidence. But reasonable jurors could also infer that by writing letters threatening to kill the case managers and spitting on one of them, Tuck understood his unlawful acts and threats to constitute an attempt to influence, intimidate, or harass them in the discharge of their duties in the future. Accordingly, we find no merit to Tuck's sole assignment of error and affirm his convictions.

## I. The Facts

{¶3} Tuck was indicted for one count of intimidation against Jennifer Haywood, Amy Haggy, and one other case manager, respectively, and one count of harassment by an inmate against Jennifer Haywood. The following evidence relevant to this appeal was introduced at trial:

{¶4} Case managers assist inmates with administrative matters, e.g., visitation and money accounts. They also sit on institutional security review committees, which conduct reviews, or "security instruments" every twelve months for each inmate. At a security review the committee determines the prisoner's security classification. Case managers also participate in hearings before the "Rules Infraction Board" or RIB after an inmate allegedly violates an institutional rule.

{¶5} At both these hearings, an inmate's security level may be reduced, stay the same, or increase. The committee's decision ultimately determines whether an inmate is classified as "4-A" or "4-B." 4-A inmates are housed with the prison's general population. 4-B inmates, deemed a higher security risk, are placed in segregation. 4-A

inmates enjoy more freedoms than 4-B inmates, who typically are locked in a prison cell for most of the day.

**{¶6}** Haggy testified that she participated in a security instrument on Tuck in January 2004. Tuck had "five points" on his record, which is an indication that the committee should consider increasing his security status. Nonetheless, when the committee recommended that he remain at the same security level, Haggy claimed Tuck became upset because he thought he should receive a reduction in security classification.

**{¶7}** Weeks later at a hearing for a rules infraction, Tuck informed a prison official that he was going to cook "baby oil" and "magic shave" and boil Haggy's skin off. The RIB found Tuck guilty of a rule infraction and reclassified him as 4-B.

**{¶8}** Haggy was informed about Tuck's threat at the RIB hearing. Over the course of the next year she received two "kites" or letters from Tuck in which he threatened to kill her. Haggy also viewed a letter that Tuck sent to an attorney in September 2004 in which he described, in detail, how he would like to murder Haggy. In the letter, Tuck describes purchasing a specific taser over the internet, isolating Haggy and zapping her with the taser, then peeling her skin off with a shear and burning her body on a stake. In this letter, Tuck also threatened to kill Haywood.

**{¶9}** Haggy believed that Tuck was mad at her because he felt that she altered his prison file so that he would be denied parole at his next Parole Board hearing. Haggy took Tuck's threats very seriously and believed that Tuck would kill her if he got out of prison. Haggy stated that she quit the department soon after the threats began and "just didn't want to deal with it anymore."

{¶10} On cross-examination, Haggy explained that she had no role in the Parole Board's decision making process. She would ensure that inmates appeared at parole hearings, but made no recommendations to the Parole Board. However, Haggy also stated that inmates classified as 4-B typically do not get paroled.

{¶11} Haywood testified that in December 2004 she attended Tuck's security hearing. She did not sit in on the hearing because she was aware of the threat Tuck made against her in the letter to the attorney. Instead, she sat in the waiting room outside of the hearing.

{¶12} Prison staff at the security hearing informed Tuck that he would remain classified as 4-B. When Tuck saw Haywood as he was leaving the hearing, he aggressively approached her and spat on her face.

{¶13} Tuck testified at length and explained the reason behind his threats and actions. He believed that Haggy altered his prison files so that he would not be paroled. He was angry at Haywood because of some issue with his medical file that resulted in him being erroneously transferred to a different prison.

{¶14} Tuck denied attempting to intimidate any of the case managers. He characterized his threats as anger in response to perceived wrongs committed by the case managers. Tuck explained: "I didn't intimidate none of them. *** It was all past tense cause they, it was all actions that they actually did during previous like 4-B committees and paper work. I was more or less bitching about past problems more than anything."

{¶15} Jurors ultimately convicted Tuck of two counts of intimidation for his actions against Haywood and Haggy. Jurors found Tuck not guilty of one count of

intimidation against the other case manager and were unable to reach a verdict on the harassment by an inmate charge.  After the trial court sentenced him, Tuck filed this appeal.

## II. Assignment of Error

**{¶16}**  Tuck has presented a single assignment of error:

The trial court erred when it entered judgment against the defendant on the charges of intimidation when the evidence is insufficient to sustain the conviction.

## III. Sufficiency of the Evidence

**{¶17}**  Tuck argues in his sole assignment of error that the evidence was insufficient to support his convictions for intimidation against Haywood and Haggy.

**{¶18}**  When reviewing a case to determine if the record contains sufficient evidence to support a criminal conviction, the function of an appellate court "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith,* Pickaway App. No. 06CA7, 2007-Ohio-502, at ¶33, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus. See, also, *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781.

**{¶19}**  The sufficiency of the evidence test "raises a question of law and does not allow us to weigh the evidence." *Smith* at ¶34, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Instead, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony,

to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Smith,* at ¶34, citing *Jackson,* 443 U.S. at 319.  Thus, we must "reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact." *Smith,* at ¶34, citing *State v. Thomas* (1982), 70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356; *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus.

**{¶20}**  The intimidation offense in question is set forth in R.C. 2921.03, and provides:

> (A) No person, knowingly and by force, by unlawful threat of harm to any person or property, or by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of the person's duty.

**{¶21}**  "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶22}**  Tuck contends that the State produced insufficient evidence of a "nexus" between his actions and a desire to influence, intimidate, or hinder Haywood and Haggy in the discharge of their duties as public servants.  In other words, Tuck admits that he threatened the two case managers and spit on Haywood.  But he contends that the evidence was insufficient to permit jurors to conclude that he understood those acts to constitute an attempt to influence, intimidate, or hinder them in the discharge of their duties.  Tuck characterizes his actions as expressing frustration at two individuals

because of his belief that their actions have caused him to remain in prison, i.e., retaliation for past decisions rather than an attempt to influence future conduct.

{¶23} In response, the State argues that the evidence showed that Haywood and Haggy, as case managers, would be involved in future decision-making regarding the security level of inmates at SOCF. Their involvement in the security process indicated a strong likelihood that they could be involved in future security instruments or RIB committees that would determine Tuck's security status level.

{¶24} To prove the mental state element of the crime of intimidation, the State was required to introduce evidence demonstrating that Tuck knew when he made his threats and actions, that they would probably be of a nature that they would constitute an attempt to influence, intimidate, or hinder Haywood and Haggy in the performance of their official duties. *State v. Bowshier*, 167 Ohio App.3d 87, 2006-Ohio-2822, 853 N.E.2d 1210, at ¶¶63, 74. Other courts have characterized this particular element as a "nexus" between the unlawful act or threat and a desire to achieve a future result. See *State v. Pickens*, Marion App. No. 9-04-28, 2005-Ohio-328, at ¶10; *State v. Jackson*, Franklin App. No. 02AP-867, 2003-Ohio-6183, at ¶54.

{¶25} On the stand, Tuck adamantly denied that his threats were intended to achieve any future result. He explained that he was expressing his frustration at perceived wrongs committed by Haywood and Haggy that led him to be denied parole. The State produced no directly contrary evidence, i.e., none of Tuck's written threats or actions were accompanied by any overt statement or indication by him that he desired the threat to achieve a result. Thus, if the jury were to conclude that Tuck did understand his threats to constitute an attempt to influence, intimidate, or hinder, it

would have to rely solely on inferences made from theses unlawful actions and reject Tuck's testimony to the contrary. Before proceeding we note that witness credibility is within the province of the jury and we do not weigh the evidence when reviewing its legal sufficiency. *State v. Jamison* (1990), 49 Ohio St.3d 182, 189, 552 N.E.2d 180.

**{¶26}** Tuck cites *Jackson*, supra, in support of his argument. In that case, a domestic dispute occurred between the defendant and his girlfriend at their shared residence. The girlfriend left and called police, who arrived to find the defendant extremely intoxicated. There was evidence that the defendant had started a fire so he was subsequently charged with arson.

**{¶27}** Hours later the defendant called the residence from jail and spoke with a friend of the girlfriend. He told the friend "tell Shelia I'm going to kill her when I get out of here" and ended the conversation by warning, "I'm going to make her life a living hell when I get out of here." For this the defendant was charged and convicted of intimidation of a crime witness, a violation of R.C. 2921.04.[1]

**{¶28}** The appellate court held that the evidence was insufficient to sustain the defendant's intimidation conviction because there was no evidence to suggest that the defendant made the threat to discourage the girlfriend from filing charges or testifying against him. The court noted that the friend of the girlfriend thought that the defendant "may simply have been expressing his frustration at being in jail". Id. at ¶54.

**{¶29}** Tuck contends his threats and actions, devoid of any overt statements indicating a desired result, were similar to those in *Jackson*. In other words, the evidence at best indicated that his threats were an expression of frustration. However,

---

[1] R.C. 2921.03 (intimidation) and R.C. 2921.04 (intimidation of crime victim or witness) are sufficiently similar such that the reasoning applicable to one may be relevant to the other. See *State v. Simms*, 165 Ohio App.3d 83, 2005-Ohio-5681, 844 N.E.2d 1212, at ¶14.

we conclude that *Jackson* is distinguishable. There the defendant uttered a single threat over the phone towards his girlfriend hours after being arrested while extremely intoxicated. In the present case, Tuck made repeated and detailed written threats from his jail cell against Haywood and Haggy over an extended period of time. This could indicate to jurors that the threats were not an impulsive act but carefully thought-out and planned. That is, jurors might conclude that Tuck took time to consider what result he could achieve by making threats against the two case managers.

**{¶30}** Second, the defendant in *Jackson* directed a threat toward a person with whom he had a personal relationship and had a domestic dispute. In the present case, Tuck's threats were against individuals with whom he did not have any sort of personal relationship. Rather, Haggy's and Haywood's connection with Tuck was purely administrative. They held a degree of continuing administrative oversight over his security classification as an inmate.

**{¶31}** *Bowshier*, cited earlier, is also instructive. In that case police responded to a domestic disturbance at an apartment where they arrested an extremely intoxicated defendant. As he was being arrested, the defendant resisted arrest, began cursing at the arresting police officer, spit at him, and threatened to assault him repeatedly. The defendant also threatened to assault the police officer if he saw him on the street. The defendant's crude behavior and threats towards the arresting police officer continued even while being booked into jail. The defendant was ultimately charged with and convicted of intimidation.

**{¶32}** On appeal, the defendant argued that the evidence was insufficient to convict him of intimidation. The defendant also raised a manifest weight argument. The

court noted that two possible inferences could have arisen from the defendant's threats and actions directed towards the police officer:

**{¶33}** "One potential inference is that Bowshier understood that his threats of bodily harm against Bower would constitute an attempt to influence, intimidate, or hinder Bower in the performance of his duties, presumably by dropping the charges against Bowshier and releasing him, or perhaps by reducing those charges. Another potential inference is that Bowshier understood nothing of the kind, but was instead venting his frustration and rage at having been arrested under circumstances in which, with at least some reasonable basis, he considered himself to have been the victim of his girlfriend's misconduct." Id. at ¶65.

**{¶34}** The court ultimately concluded that the defendant's conviction was against the manifest weight of the evidence because the inference supported by the greater evidence in that case was that defendant was merely venting his rage. However, the court rejected the defendant's argument that the evidence was insufficient to convict him of intimidation. The court concluded that the evidence, *when viewed in a light most favorable to the prosecution*, could permit a reasonable jury to conclude, beyond a reasonable doubt, that the defendants threats of physical violence constituted an attempt to influence, intimidate, or hinder the police officer in the performance of his official duties. Id at ¶74.

**{¶35}** In the present case, Tuck's assertion that he threatened Haggy and Haywood and spat on Haywood merely in response to perceived wrongs is a permissible inference from the evidence. But the evidence also supports other inferences. One is that Tuck committed these acts to intimidate the two case managers

for the purposes of favorable treatment in future security reviews. Another possible inference is that he intended to intimidate them such that they would not participate in any future security instruments or RIB hearings concerning his behavior. He may have also intended his threats to cause sufficient distress such that their ability to perform their public duties would be hindered.

{¶36} The State's witnesses' testimony supports this final inference. Both Haywood and Haggy testified that they took his threats very seriously. Haywood decided not to participate in Tuck's 4-B hearing because of her awareness of his earlier threats. And Haggy stated that one of the reasons she quit her job was because of Tuck's threats.

{¶37} Thus, when viewed in a light most favorable to the prosecution, the evidence could permit jurors to conclude, beyond a reasonable doubt, that Tuck understood his unlawful acts and threats towards the two administrative case managers as an attempt to influence, intimidate, or hinder them in the discharge of their continuing duties.[2]

{¶38} Consequently, we overrule Tuck's sole assignment of error.

JUDGMENT AFFIRMED.

---

[2] We note that the circumstantial evidence of Tuck's purpose in making the threats was not substantial. Had we, like the court in *Bowshier*, been reviewing the relative weight of the evidence, the result here may have been different.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J. & Kline, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
       William H. Harsha, Judge




## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**